UNITED STATES, Appellant,

v.

Bernard F. BRADSTREET,
Defendant, Appellee.

No. 99–1267.

United States Court of Appeals,
First Circuit.

Heard Feb. 7, 2000.

Decided March 27, 2000.

Jennifer Zacks, Assistant United States Attorney, with whom Mark W. Pearlstein, Acting United States Attorney, and Jonathan L. Kotlier, Assistant United States Attorney, were on brief, for appellant.

Howard M. Cooper, with whom Thomas A. Reed, David H. Rich, and Todd & Weld were on brief, for appellee.

Before TORRUELLA, Chief Judge, BOUDIN and STAHL, Circuit Judges.

STAHL, Circuit Judge.

In *United States v. Bradstreet*, 135 F.3d 46, 58 (1st Cir.1998) ("*Bradstreet I*"), we vacated defendant-appellee Bernard F. Bradstreet's sentence and remanded for

resencing. At resentencing, the district court granted Bradstreet's motion for a downward departure because of his post-sentence rehabilitation. We affirm.

## I.

Because we detailed the facts of this case in *Bradstreet I*, 135 F.3d at 48–55, we reiterate only those necessary to decide the narrow issues before us.

Bradstreet was the president and chief financial officer of Kurzweil Applied Intelligence, Inc. ("Kurzweil"), a company that developed voice recognition software. In the early 1990s, Kurzweil sought to sell stock to the public through an initial public offering. The offering, which Bradstreet spearheaded, violated various Securities and Exchange Commission rules, and the company issued Forms 10–Q with fraudulently inflated revenue figures. The government eventually prosecuted Bradstreet for securities fraud and garnered a conviction. During his trial, Bradstreet testified in his own defense, but the jury conclusively rejected his testimony, which was demonstrably incompatible with the verdict. Bradstreet did not accept responsibility during either the trial or at his original sentencing.

The Pre–Sentence Report ("PSR") recommended under the United States Sentencing Guidelines ("the Guidelines") a base offense level of six, *see* U.S.S.G. § 2F1.1; a two-level increase for more than minimal planning, *see* U.S.S.G. § 2F1.1(b)(2); a fifteen-level increase because the loss, here $11,471,250.00, was in excess of $10 million but less than $20 million, *see* U.S.S.G. § 2F1.1(b)(1)(P); a four-level increase for Bradstreet's status as an organizer of criminal activity with more than five participants, *see* U.S.S.G. § 3B1.1(a); and a two-level increase for his abuse of a position of private or public trust, *see* U.S.S.G. § 3B1.3. The PSR therefore proposed a total offense level of twenty-nine, which because Bradstreet had a criminal history category of I, yielded an 87–108 month guideline sentencing range ("GSR").

Before sentencing, the government and Bradstreet entered into a sentencing agreement whereby the government agreed both not to seek the two-level upward adjustment under U.S.S.G. § 3B1.3 for abuse of a position of trust and to recommend that the amount of loss be set only to $2.3 million. These modifications, if accepted by the district court, would give Bradstreet a total offense level of twenty-four and a GSR of 51–63 months, assuming no other departures. In exchange, Bradstreet agreed that he would seek a downward departure only on the ground that his conduct was "a single act of aberrant behavior," which we endorsed as a permissible ground for departure in *United States v. Grandmaison*, 77 F.3d 555, 560–64 (1st Cir.1996). At sentencing, the government opposed Bradstreet's motion for a downward departure pursuant to *Grandmaison*, but the court granted it. In the end, the court established Bradstreet's offense level at twenty-four, departed downward four levels to an offense level of twenty because it found the convicted conduct to be "a single act of aberrant behavior," and sentenced Bradstreet to thirty-three months, which is at the bottom of the guideline range.

The government appealed the district court's decision to depart downward at sentencing and Bradstreet appealed his conviction. We affirmed the conviction, but ruled that the district court had erred in granting the departure, vacated the sentence, and remanded for resentencing. *See Bradstreet I*, 135 F.3d at 58.

Meanwhile, Bradstreet had been incarcerated since he began serving his original sentence on January 27, 1997. While in prison, he volunteered to tutor less-advantaged inmates, taught adult continuing education classes around curricula that he developed, taught inmates courses on how to view their lives more positively, volunteered and succeeded in the prison's Boot Camp Program, began serving as the pris-

on chaplain's assistant, became a program assistant and clerk of the prison parenting program, and lectured at local colleges to business students on ethical perils in the business world.

On December 1, 1998, prior to his resentencing, Bradstreet moved for a downward departure to reflect his post-sentence rehabilitative efforts. Appended to the motion were letters of commendation from people with whom he had worked in prison as well as from several of the inmates whom he had assisted. The government opposed the motion on the grounds that because of the initial sentencing agreement, Bradstreet was barred from requesting a downward departure on any basis other than that the convicted conduct was a single act of aberrant behavior. The government also argued that Bradstreet did not qualify for a departure for post-sentencing rehabilitation, assuming such a departure ever would be proper.

The district court disagreed with both of the government's arguments and allowed Bradstreet's motion for a downward departure for his post-sentence rehabilitation. With regard to the first argument, the court reasoned that it could consider departure grounds aside from those agreed upon because "the sentencing agreement does not purport to bind, nor could it bind, the sentencing court either then or now." With regard to the second argument, the district court decided it could depart downward if it found that Bradstreet "ha[d] demonstrated post-sentencing rehabilitative conduct to an unusual or exceptional extent." Because of Bradstreet's rehabilitative efforts, which the court noted were "directed, in large degree, to others," and because Bradstreet accepted at his second sentencing responsibility for his conduct, the court found that Bradstreet's efforts warranted a downward departure. The court again departed downward four levels, and this time sentenced Bradstreet to thirty-six months, which falls in the middle of the GSR. The government appeals.

## II.

On appeal, the government reiterates the two arguments it made below. First, it contends that the district court erred by not holding Bradstreet to the sentencing agreement. Second, it asserts that Bradstreet's behavior while in prison does not justify a downward departure based on post-sentence rehabilitation. We address in turn each claim.

### A.

The government argues that by seeking at resentencing only a fifty-one month sentence, it performed its contractual obligation, but Bradstreet did not perform his because he sought a downward departure based on a ground other than that specified in the sentencing agreement. In the government's view, the district court should have specifically enforced the agreement by refusing to consider Bradstreet's rehabilitation claim. In response, Bradstreet argues that the government waived this argument because of footnote one in its appellate brief, which confusingly asserts that the government "could argue, but is not, that Bradstreet is in breach of the agreement by advancing the new departure argument." Bradstreet further contends the argument is waived because the government did not insist on specific performance to the sentencing judge.

If the government waived this argument, that is the end of the matter. *See United States v. Slade*, 980 F.2d 27, 30 (1st Cir.1992) ("It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals."). The question, then, is whether the inartfully phrased footnote one waived any arguments about Bradstreet's breach. Given the totality of the government's arguments about the sentencing agreement, we detect no waiver. The government argued to the district court that Bradstreet should not be allowed to advance the new ground for de-

parture because the sentencing agreement prohibited it. The appellate brief, while including footnote one, contended that Bradstreet's new motion was "barred by the agreement." In addition, the district court ruled during the sentencing hearing against the government on this very issue by noting that it was not bound by the original sentencing agreement and could consider for departure any ground that it desired. Whatever significance footnote one might have had standing alone, a broader look at what the government actually argued in its brief and at oral argument rebuts any appearance of waiver. *Cf. Gitlitz v. Commissioner*, 182 F.3d 1143, 1145–46 (10th Cir.1999) (finding that "notwithstanding certain ambiguous comments of counsel during the summary judgment hearing, [the IRS] did not intend to waive any arguments previously asserted in its summary judgment motion"), *petition for cert. filed*, (Feb. 1, 2000); *MacDonald v. General Motors Corp.*, 110 F.3d 337, 340 (6th Cir.1997) (declining to find waiver when counsel's comments implying waiver were "fundamentally at odds with any intent to waive the argument").[1] In our view, the totality of the circumstances makes clear that in footnote one, the government only intended to iterate that it would not use Bradstreet's breach to withdraw from the original sentencing agreement and pursue a tougher sentence.

 Finding no deliberate waiver, we address the merits of the government's argument. Courts look at sentencing agreements and plea agreements as contracts. *See United States v. Sophie*, 900 F.2d 1064, 1071 (7th Cir.1990).[2] It is well settled that when the government breaches a plea agreement, the defendant either can seek specific performance or can withdraw from the agreement. *See Santobello v. New York*, 404 U.S. 257, 262–63, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."); *United States v. Velez Carrero*, 77 F.3d 11, 11–12 (1st Cir.1996). Yet, choosing the appropriate remedy for nonperformance rests in the discretion of the trial courts. *See Santobello*, 404 U.S. at 263, 92 S.Ct. 495 ("The ultimate relief to which petitioner is entitled we leave to the discretion of the [trial] court, which is in a better position to decide [the remedy]."). Therefore, while we review de novo whether Bradstreet breached the sentencing agreement, *see, e.g., United States v. Canada*, 960 F.2d 263, 269 (1st Cir.1992), we defer to the lower court's judgment regarding the appropriate remedy, *see Santobello*, 404 U.S. at 263, 92 S.Ct. 495.[3]

1. The government's Reply Brief states: "Although perhaps inartfully worded, it is clear that by [footnote one] the government meant only that it was not arguing for recission of the agreement based on the defendant's breach." While a reply brief is not the proper place to raise new arguments, *see United States v. Brennan*, 994 F.2d 918, 922 n. 7 (1st Cir.1993) (noting the "well-settled" rule that arguments raised for the first time in a reply brief are waived), it is proper for a court to look there for clarification, *see Provencher v. CVS Pharmacy*, 145 F.3d 5, 8 n. 2 (1st Cir. 1998) (accepting for clarification of its position arguments in the appellant's reply brief); *Buckley v. Collins*, 904 F.2d 263, 267 (5th Cir.1990) (considering but rejecting on the merits clarifications appellant made in his reply brief).

2. There is little developed caselaw specifically relating to sentencing agreements. They are similar, however, to plea agreements, *see Sophie*, 900 F.2d at 1071, which we also view as contracts, *see United States v. Papaleo*, 853 F.2d 16, 19 (1st Cir.1988) ("While plea agreements are a matter of criminal jurisprudence, most courts, including this one, have held that they are also subject to contract principles."). We therefore will look to the caselaw of plea agreements when addressing the sentencing agreement issues in this case.

3. This case presented the district court with a different potential question than did *Santobello* and *Velez Carrero*: the issue was not how to remedy a breach by the government; it was how to remedy a breach, if any, by the defendant. The government contends that specific performance should be allowed in such circumstances, yet it cites mostly cases in which the government was the nonperforming culprit. *See, e.g., United States v.*

Here, the district court bracketed the government's argument that Bradstreet should be held to his bargain and allowed him to argue for the downward departure. More specifically, the judge found whether Bradstreet had breached the agreement and whether it could grant the government specific performance to be "somewhat beside the point" because the court was not bound by recommendations in the parties' sentencing agreement. *See* Fed.R.Crim.P. 11(e)(1)(B) (noting that any sentencing "recommendation or request is not binding on the court"); *see also United States v. Martinez–Martinez*, 69 F.3d 1215, 1218 (1st Cir.1995) (noting that "any sentencing agreement between the parties was not binding on the court but merely a recommendation"). The court thus indicated that regardless of whether it could grant specific performance for a defendant's breach, it would not do so in this case because it desired to consider the merits of Bradstreet's claimed entitlement to a downward departure. Because the government had sufficient notice of Bradstreet's argument and could formulate an effective response, we think the court acted within its discretion. Sentencing, after all, is a matter for the district court and not for the government. *Cf.* Fed. R.Crim.P. 11(e)(1)(B); *Martinez–Martinez*, 69 F.3d at 1218.

Burns, 160 F.3d 82, 83 (1st Cir.1998); *United States v. Clark*, 55 F.3d 9, 12 (1st Cir.1995). The rationale for requiring the government to specifically perform is that "plea bargaining requires defendants to waive fundamental constitutional rights." *Velez Carrero*, 77 F.3d at 11. Because these concerns do not abound when the defendant breaches an agreement, the reasoning in these cases is inapposite.

The Second Circuit was the first court to address this rare question. *See United States v. Alexander*, 869 F.2d 91, 93–94 (2d Cir.1989) (holding "that when a defendant breaches his plea agreement, specific performance is available to the government as a possible remedy"). Following the Supreme Court's example in *Santobello*, that court "le[ft] it to the discretion of the district court to determine in the first instance whether under the circumstances specific performance would be appropriate in this case." *Id.* at 95. In a later case, the Sixth Circuit, while also holding that

**B.**

■ We now turn to whether the district court was correct to grant Bradstreet's motion for a downward departure because of his post-sentence rehabilitation. The question of whether the Guidelines allow such a departure is one of first impression in this circuit, but it is not novel to the courts of appeals. *Compare United States v. Green*, 152 F.3d 1202, 1207–08 (9th Cir.1998) (concluding that post-sentencing rehabilitative efforts may be a basis for a downward departure), *United States v. Rhodes*, 145 F.3d 1375, 1379 (D.C.Cir.1998) (same), *United States v. Core*, 125 F.3d 74, 77 (2d Cir.1997) (same), *United States v. Sally*, 116 F.3d 76, 80 (3d Cir.1997) (same), *and United States v. Brock*, 108 F.3d 31, 35 (4th Cir.1997) (same), *with United States v. Sims*, 174 F.3d 911, 912 (8th Cir.1999) (holding that post-sentencing rehabilitation is not an appropriate basis for a downward departure). We review this question de novo. *See Koon v. United States*, 518 U.S. 81, 98–100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

■ In *Koon*, the Supreme Court discussed the four different types of departure factors courts may consider when sentencing under the Guidelines.[4] *See*

specific performance should be available as a possible remedy, stated that courts should be hesitant to grant the government specific performance. *See United States v. Skidmore*, 998 F.2d 372, 376 (6th Cir.1993). Both courts implied that the government should receive this remedy only when all other remedies are foreclosed to it.

We need not determine whether and when specific performance ever is an appropriate remedy in the case of a defendant's breach of a sentencing or plea agreement because in this case, the district court would have considered Bradstreet's motion for a downward departure in any event.

4. While *Koon* dealt only with the range of permissible considerations when a defendant is first sentenced, most circuits have relied on it for resentencing as well. *See, e.g., Rhodes,* 145 F.3d at 1378–79. *But see Sims,* 174 F.3d at 912 ("The [*Koon*] Court never addressed

*Koon,* 518 U.S. at 95–96, 116 S.Ct. 2035. Those departure factors are as follows: forbidden factors, encouraged factors, discouraged factors, and unmentioned factors.[5] *See id.* Every court to have addressed post-sentence rehabilitation has agreed that the guidelines do not mention it as a factor for departure. *See, e.g., Rhodes,* 145 F.3d at 1379. A court can use an unmentioned factor as the basis for a departure. *See Koon,* 518 U.S. at 96, 116 S.Ct. 2035; *Burns v. United States,* 501 U.S. 129, 136–37, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991) (noting that the Guidelines "place essentially no limit on the number of potential factors that may warrant a departure"); *see also* U.S. Sentencing Guidelines Manual ch. 1, pt. A, cmt. 4(b) at 5–6 (1995) ("When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted."). In fact, the Sentencing Commission, while setting forth factors courts may not consider, "does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case."

U.S. Sentencing Guidelines Manual ch. 1, pt. A, cmt. 4(b) at 6. Moreover, "a federal court's examination of whether a factor can ever be an appropriate basis for departure is limited to determining whether the Commission has proscribed, as a categorical matter, consideration of the factor." *Koon,* 518 U.S. at 109, 116 S.Ct. 2035. Because the Guidelines have not proscribed this factor, we join the majority of our sister circuits by holding that a district court may use post-sentencing rehabilitation to depart in a sufficiently exceptional case.[6]

The government contends that this result is unfair because it rewards only those defendants who are lucky enough to win a revisitation of their sentence. We disagree. "Any disparity that might result from allowing the district court to consider post-conviction rehabilitation, however, flows not from [defendants] being 'lucky enough' to be resentenced, or from some 'random' event, but rather from the reversal of [their] conviction [or sentence]." *Rhodes,* 145 F.3d at 1381 (citations omitted). In addition, the Guidelines are not designed to eliminate all disparities in sentencing; rather, their design is to eliminate "unwarranted" disparities. *See* 28

---

the question of whether post-sentencing events might support a departure at a *resentencing* because that matter was not before it." (emphasis supplied)).

**5.** Specifically, the *Koon* Court explained:

If the special factor is a forbidden factor, the sentencing court cannot use it as a basis for departure. If the special factor is an encouraged factor, the court is authorized to depart if the applicable Guideline does not already take it into account. If the special factor is a discouraged factor, or an encouraged factor already taken into account by the applicable Guideline, the court should depart only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present. *Cf.* [*United States v. Rivera,* 994 F.2d 942, 949 (1st Cir.1993)]. If a factor is unmentioned in the Guidelines, the court must, after considering the "structure and theory of both relevant individual guide-

lines and the Guidelines taken as a whole," *ibid.,* decide whether it is sufficient to take the case out of the Guideline's heartland. 518 U.S. at 95–96, 116 S.Ct. 2035.

**6.** The Eighth Circuit firmly has rejected post-conviction rehabilitation as a ground for departure upon resentencing. *See Sims,* 174 F.3d at 912. That court, however, relied on circuit precedent that upon resentencing, " ' "the district court can hear any relevant evidence on that issue that it could have heard at the first hearing." ' " *Id.* at 913 (quoting *United States v. Behler,* 100 F.3d 632, 635 (8th Cir.1996) (quoting *United States v. Cornelius,* 968 F.2d 703, 705 (8th Cir.1992))). This circuit does not follow the rule articulated in *Cornelius, see United States v. Ticchiarelli,* 171 F.3d 24, 32 (1st Cir.) (noting that "[a] defendant should not be held to have waived an issue if he did not have a reason to raise it at his original sentencing"), *cert. denied,* —— U.S. ——, 120 S.Ct. 129, 145 L.Ed.2d 109 (1999), and this difference in approach renders *Sims* 's reasoning unpersuasive.

U.S.C. § 991(b)(1)(B) (1994) (directing the Sentencing Commission to "avoid[ ] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct."); *Rhodes,* 145 F.3d at 1381 (citing authority). As the *Rhodes* court adroitly explained, "[d]istinguishing between prisoners whose convictions are reversed on appeal and all other prisoners hardly seems 'unwarranted.' " 145 F.3d at 1381.

The government also argues that when Congress abandoned the parole system by passing the Sentencing Reform Act ("SRA"), it meant to prevent district courts from considering a prisoner's good behavior. We rejected this argument in cases of extraordinary presentence rehabilitation. *See United States v. Sklar,* 920 F.2d 107, 116 (1st Cir.1990). While not without some force, we do not accept the government's argument. The parole system created both sentencing disparity and an environment in which the prisoner's release was a mystery. *See* S.Rep. No. 98–225, at 46, 48 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3229, 3231. The Parole Commission used its function "to reduce unwarranted disparity in judicially imposed prison terms." *Id.* at 3229. In response, judges often would "sentence a defendant on the basis of when they believe[d] the Parole Commission" might grant parole. *Id.* Congress aimed the SRA at ending this approach. *See Mistretta v. United States,* 488 U.S. 361, 367, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The SRA's goal was to turn prisoners over to the Bureau of Prisons with a definite sentence, free from the wrangling between it and the Parole Commission. *See* S.Rep. No. 98–225, at 49, *reprinted in* 1984 U.S.C.C.A.N. at 3232 (noting the pre-SRA problems in which "the actual terms to be served [were] subject continually to the 'good time' adjustments by the Bureau of Prisons and to counter-adjustments by the Parole Commission"). Upon resentencing, the district court pronounces a firm, unadjustable sentence that the Bureau of Prisons is to carry out; that the court took into account post-sentence rehabilitation is irrelevant to the Bureau's function.

After deciding that this factor is not prohibited by the Guidelines, our analysis shifts to "whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." *Koon,* 518 U.S. at 109, 116 S.Ct. 2035. The relevant standard is whether the "factor [is] present to such an exceptional degree that the situation cannot be considered typical of those circumstances in which the explicit departure—rehabilitation in the context of acceptance of responsibility—is normally granted." *Rhodes,* 145 F.3d at 1383 (internal quotation marks and citation omitted). While making this determination, "[t]he court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be 'highly infrequent.' " *Koon,* 518 U.S. at 96, 116 S.Ct. 2035. Even so, we owe a degree of deference to the district court's determination in this regard. *See id.* at 98, 116 S.Ct. 2035 (noting that "[a] district court's decision to depart from the Guidelines ... will in most cases be due substantial deference"). The question, then, is whether Bradstreet's rehabilitative efforts meet the "outside the heartland" criteria *Koon* articulated. In this case, the district court found that because of Bradstreet's extraordinary efforts toward rehabilitation, community service, and efforts at educating his fellow inmates, his rehabilitation took this case outside the heartland of the Guidelines. The district court made the comparison to other cases quite clear. It specifically noted "that unlike inmates in the cases I have cited, whose rehabilitative efforts were focused on their own self-improvement, Mr. Bradstreet's efforts have been directed, in large degree, to others as well." The district court found "Bradstreet's efforts at post-sentencing rehabilitation [to be] exceptional, unusual, and worthy of recognition." As *Koon* instructs, "[d]istrict courts have an institutional advantage over appellate

courts in making these sorts of determinations, especially as they see so many more Guidelines cases than appellate courts do." 518 U.S. at 98, 116 S.Ct. 2035. The district court was in a better position to determine whether Bradstreet's rehabilitative efforts were extraordinary, and in the absence of meaningful contradictory evidence, we will defer to that judgment in this particular case.

## III.

For the foregoing reasons, we *affirm* the judgment of the district court.