# United States Court of Appeals
## For the First Circuit

---

No. 00-1429
No. 00-1513

UNITED STATES OF AMERICA,

Appellee/Cross-Appellant,

v.

GUILLERMO MALDONADO,

Defendant, Appellant/Cross-Appellee.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Ronald R. Lagueux, U.S. District Judge]

---

Before

Torruella, Chief Judge,

Boudin and Lipez, Circuit Judges.

---

Mark B. Laroche, by appointment of the court, for defendant.
Donald C. Lockhart, Assistant United States Attorney, with whom Margaret E. Curran, United States Attorney, and Kenneth P. Madden, Assistant United States Attorney, were on consolidated brief for the United States.

---

February 23, 2001

---

BOUDIN, Circuit Judge. The question is whether a district court may depart downward to save taxpayers the expense of imprisoning a defendant who is likely to be deported after completing his sentence. In this instance, Guillermo Maldonado (who says his real name is Miguel Angel Soto) pled guilty, in August 1997, to federal charges of possession with intent to distribute cocaine and heroin. 21 U.S.C. § 841(a)(1)(1994). In March 1998, Maldonado was sentenced to 210 months in prison, the minimum prescribed by the Sentencing Guidelines as computed by the district court.

Maldonado's counsel filed a timely notice of appeal but did not pursue the appeal, and this court dismissed the appeal for want of prosecution in July 1998. Maldonado then filed a section 2255 petition, 28 U.S.C. § 2255 (Supp. II 1996), alleging ineffectiveness of counsel in allowing the appeal to lapse; and, with the government's agreement, the district court granted the petition and ordered resentencing to permit Maldonado to take a direct appeal. See Bonneau v. United States, 961 F.2d 17, 23 (1st Cir. 1992). However, the court did not mechanically impose the same sentence, as it could have done.

Instead, on the day of the resentencing hearing (March 20, 2000), Maldonado filed a motion seeking a downward departure based on evidence of rehabilitation. U.S.S.G. § 5K2.0. Attached were copies of a high school equivalency diploma and certificates evidencing completion of a number of courses Maldonado had taken in 1998 and 1999 while in prison. The government opposed the downward departure, saying that the evidence did not show extraordinary post-sentencing rehabilitation. Maldonado's counsel argued in favor of the departure, adding that a downward departure might also address a concern mentioned by the court at the first sentencing, namely, that taxpayers would be paying for 17 years of imprisonment.

The district court then sentenced Maldonado to 120 months' imprisonment, a downward departure of 90 months, stating:

> What troubles me about these cases is that 210 months in federal prison for someone who's going to be deported is a waste of taxpayer money, some $20,000 a year just to keep him in federal prison. Recently, I have been departing downward when the sentence of a deportable felon is in the higher ranges because of the concern I have for the taxpayers paying for someone in a federal prison when that person will be deported. Obviously the defendant has been doing some things to help himself while he's in prison, and that's commendable. But the real reason I'm going to depart downward

here is because I don't want the taxpayers
to pay for him unnecessarily.

Maldonado now appeals, arguing that the guideline calculation originally adopted by the district court (and effectively reaffirmed on resentencing) was mistaken in several respects, and that Maldonado's guilty plea was defective. The government cross-appeals, arguing that the district court had no authority to consider a downward departure after the resentencing and, in any event, erred in granting the departure on the basis of expense to the taxpayer.

We start with the government's appeal. Its first claim is that the district court had no right after granting the section 2255 motion to do anything more than to reimpose the original sentence. The government is correct that reimposing the original sentence without more would remedy the assumed constitutional defect, so the district court <u>could</u> have declined to reexamine the sentence. <u>See</u> <u>United States</u> v. <u>Torres-Otero</u>, 232 F.3d 24, 30-31 (1st Cir. 2000). The more difficult question is whether, as the government now urges, the district court was forbidden from sentencing the defendant afresh and imposing a different sentence.

The government first argues that the plain language of section 2255 requires that the "error" to which the petition is addressed must fit in one of the pigeonholes in the first

-4-

sentence of section 2255.[1]  Perhaps so; but if this is the case, the petition--which the government agreed should be granted--can be taken to claim that the sentence was "otherwise subject to collateral attack" because the negligence of counsel thwarted an appeal from the original conviction.  Cf. Bonneau, 961 F.2d at 23.  On this premise, section 2255 gave the district court power "to vacate, set aside or correct the sentence."  28 U.S.C. § 2255.

Nothing in the statute's language resolves the question whether the district court in such a situation is precluded from calculating the proper sentence anew.  The choice resembles that presented where, on direct appeal, a court of appeals sets aside a sentence for some defect in the calculation but neither explicitly nor implicitly limits the district court in the scope of its resentencing.  Once again, the district court is not ordinarily required to go beyond correcting the error identified by the court of appeals, e.g., United States v. Rivera-Maldonado, 124 F. Supp. 2d 788, 791 (D.P.R. 2000), but that does not answer the question whether it may do so if it wishes.

_____

[1]Namely, that the sentence was unlawful or the court was without jurisdiction to impose it, or "that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ."  28 U.S.C. § 2255.

-5-

In both situations, it is a windfall to a defendant if in resentencing the district court goes beyond correction of the original error and gives the defendant a lower sentence by virtue of a new calculation on an unrelated aspect of the sentence. The tension is between an idiosyncratic benefit for one defendant not available to others and a desire to sentence properly even if this involves giving the lucky defendant a break. Since circumstances vary, one might well think that this is a choice that should be left to the district judge unless Congress or an appellate court directs otherwise. Cf. Torres-Otero, 232 F.2d at 30; United States v. Rodriguez, 112 F.3d 26, 29 (1st Cir.), cert. denied, 522 U.S. 895 (1997).

The government points out that there are severe restrictions on the district court's right to revisit a sentence previously imposed. See 18 U.S.C. § 3582(c) (1994 & Supp. II 1996) (retroactive application of guideline changes limited); Fed. R. Crim. P. 35 (seven-day limit on correction errors; one-year limit on substantial assistance reductions). This is quite true where a sentence has become final; but we are concerned with a resentencing where the original sentence was invalidated. The issue here is not whether there will be a resentencing--section 2255 permits it, as does a remand, see Fed. R. Crim. P. 35(a)--but rather of its permissible scope.

-6-

The government suggests that existing precedent prohibits _de novo_ resentencing, but we read the authorities differently. The more common case--that of a remand for resentencing after an appeal--is handled variously in different circuits. In some, it appears the district judge may go beyond correcting the error but is not required to do so. E.g., United States v. Whren, 111 F.3d 956, 958-60 (D.C. Cir. 1997), cert. denied, 522 U.S. 1119 (1998).[2] But it is hard to find an appeals court forbidding _de novo_ resentencing, unless the mandate has affirmatively restricted the remand, e.g., United States v. Parker, 101 F.3d 527, 528 (7th Cir. 1996); cf. Fed. R. Crim. P. 35(a)(1).

Criminal procedure, like the rest of life, is filled with situations in which fortuities work to the benefit or disadvantage of a prosecutor or defendant. For example, where a retrial is ordered because of some mistake in the instructions, witnesses may have died in the interval or new ones been discovered, so that the evidence at the new trial is quite different, sometimes favoring the prosecution and sometimes the defense. Section 2255 being silent, it seems to

---

[2]In two cases, somewhat surprisingly, the Second Circuit has required resentencing _de novo_. United States v. Harris, 209 F.3d 156, 162-63 (2d Cir. 2000); Soto v. United States, 185 F.3d 48, 54 (2d Cir. 1999).

-7-

us that the best approach is to retain some flexibility.  See
United States v. Handa, 122 F.3d 690, 691 (9th Cir. 1997), cert.
denied, 522 U.S. 1083 (1998).

Although the district court was thus free to consider a downward departure for any legitimate reason, we think that it erred in granting a departure on the grounds given.  The court said that it was "a waste of taxpayer money" to impose a lengthy prison term on "someone who's going to be deported."  The court did not say why, perhaps deeming it to be obvious.  It is not; there are several possibilities, and the most likely turn out to depend very much on particular circumstances.

One rationale is that deportation is additional punishment added on to the term of imprisonment.  If so, one might think that adequate deterrence of drug crimes by aliens, where deportation is quite likely, is provided by threatening aliens with a shorter sentence.  The argument assumes, however, that the alien knows before committing the crime that deportation will follow if he is caught and convicted and, further, that he knows that deportation will be highly disadvantageous to him.  One might expect these factors to vary from case to case, and the absence of either defeats the argument.

Alternatively, and perhaps more likely, the district court may have been assuming that deportation would at least protect the public against future crimes by the defendant after his shortened term of imprisonment. But even if the interest of foreign citizens is disregarded, the premise that the deported alien is gone for good is somewhat doubtful. American borders remain fairly porous. There are already many prosecutions for illegal reentry after deportation, e.g., United States v. Luna-Diaz, 222 F.3d 1, 2 (1st Cir. 2000), and, even more troubling, for criminal acts committed after illegal entry following deportation, e.g., United States v. Cuevas, 75 F.3d 778, 779 (1st Cir. 1996).

Strictly speaking, nothing in the guidelines addresses--let alone forbids--consideration of the general approach taken by the district court or shows that the Sentencing Commission considered and rejected it. Cf. United States v. Alvarez-Cardenas, 902 F.2d 734, 737 (9th Cir. 1990). In fact, in "extraordinary" cases, the guidelines themselves indicate that expense may be considered, U.S.S.G. § 5H1.1 ("elderly and infirm"); id. § 5H1.4 ("extraordinary physical impairment"); and while hedging the matter, some courts have said that

deportability might, in some situations and for varying reasons, be pertinent to a decision to depart.[3]

This juxtaposition of the "general" with the "extraordinary" is the key to our own problem. Although the Commission did not proscribe the district court's approach ("[r]ecently, I have been departing downward when . . ."), it obviously knew that deportable aliens commit crimes, that drug sentences are lengthy and that prisons are expensive. It is thus hard to avoid treating the Commission's failure to provide a discount as equivalent to rejecting a discount as a matter of course. Cf. United States v. Clase-Espinal, 115 F.3d 1054, 1057-59 (1st Cir.), cert. denied, 522 U.S. 957 (1997).

In short, a deportable alien who commits a crime is still within the "heartland" of the guidelines, absent something more. See United States v. Garay, 235 F.3d 230, 233-34 (5th Cir. 2000); United States v. Farouil, 124 F.3d 838, 847 (7th Cir. 1997). If deportability, expense, or some combination of the two justifies a departure, it would have to be based on case-specific findings that made the case unusual. Cf. United

---

[3]See, e.g., United States v. Tejeda, 146 F.3d 84, 88 (2d Cir. 1998) (per curiam); United States v. Farouil, 124 F.3d 838, 847 (7th Cir. 1997) (cited with approval in United States v. DeBeir, 186 F.3d 561, 569 (4th Cir. 1999)); United States v. Restrepo, 999 F.2d 640, 644 (2d Cir.), cert. denied, 510 U.S. 954 (1993); cf. also United States v. Smith, 27 F.3d 649, 655 (D.C. Cir. 1994).

States v. Wong, 127 F.3d 725, 728 (8th Cir. 1997). Under Koons v. United States, 518 U.S. 81, 96 (1996), the Sentencing Commission's silence might give the district court latitude in the extraordinary case; but the common facts of a long sentence and likely deportation are not by themselves extraordinary. Accord United States v. Tejeda, 146 F.3d 84, 88 (2d Cir. 1998) (per curiam). And that is all that was present here.

Because the departure was impermissible, we must remand for resentencing. The district judge did not formally rule on Maldonado's original request for a downward departure based on post-sentence rehabilitation. In the past, this circuit and others have held that a district court may depart downward in resentencing because of extraordinary circumstances reflecting rehabilitation after an earlier (now vacated) sentence for the same crime. See United States v. Bradstreet, 207 F.3d 76, 78 (1st Cir. 2000).[4]

The Commission has recently precluded this practice precisely because it does give previously sentenced prisoners a

---

[4]Accord United States v. Rudolph, 190 F.3d 720, 723 (6th Cir. 1999); United States v. Green, 152 F.3d 1202, 1207 (9th Cir. 1998); United States v. Rhodes, 145 F.3d 1375, 1379 (D.C. Cir. 1998); United States v. Sally, 116 F.3d 76, 80 (3d Cir. 1997); United States v. Core, 125 F.3d 74, 75 (2d Cir. 1997), cert. denied, 522 U.S. 1067 (1998). But see United States v. Sims, 174 F.3d 911, 912-13 (8th Cir. 1999); Rhodes, 145 F.3d at 1384 (Silberman, J., dissenting).

windfall. U.S.S.G. § 5K2.19 (Appendix X, amendment 602, effective November 1, 2000). This is a judgment that the Commission is entitled to make, but we ordinarily employ the guidelines in effect at sentencing only where they are as lenient as those in effect at the time of the offense; when the guidelines have been made more severe in the interim, the version in effect at the time of the crime is normally used, as a matter of policy and to avoid any hint of ex post facto increase in penalty. See United States v. Harotunian, 920 F.2d 1040, 1041-42 (1st Cir. 1990).

Here, the Commission's's more recent change does not persuade us that we erred in our original decision, Bradstreet, 207 F.3d at 78--to allow departures for extraordinary post-sentence rehabilitation--but only that the guidelines have been changed prospectively. Thus, on remand, Maldonado may argue to the district judge that such a departure is justified. It is far from clear that anything urged by Maldonado constituted extraordinary circumstances; but we decline to anticipate the issue since it has not been briefed by either side and may never be presented to us.

Finally, Maldonado says that his original guilty plea was rendered ineffective by defects in the colloquy and that his original guideline sentence was miscomputed. As to the guilty

plea, there was no effort before or at either of the sentencings to withdraw the plea, which means that review even on direct appeal is limited to plain error, United States v. Gandia-Maysonet, 227 F.3d 1, 5 (1st Cir. 2000). The gist of the claim of error, which is not well developed, concerns the government's charge that Maldonado possessed heroin that was found in a car in a rolled up T-shirt.

At the plea colloquy, the government proffered that a police officer had seen Maldonado place the T-shirt in the car and shortly after the police stopped the car, discovered two packages of heroin in the T-shirt. When these facts were adduced at the plea hearing, Maldonado agreed with this summary of evidence, objecting only to the characterization of cocaine later found in his apartment as crack. Although counsel says that the court should have explained the alleged facts further because they were filtered through an interpreter, there is no indication that they were inadequately explained or that Maldonado misunderstood.

Maldonado also objects to the sentencing calculations on several grounds: to the inclusion of the drugs found in the T-shirt, to treating as crack cocaine some of the drugs later found in his apartment, to the addition of two levels for obstruction of justice for giving a false name to the Probation

Department and  lying to the court, U.S.S.G. § 3C1.1, and to the failure to give Maldonado a two-level reduction for acceptance of responsibility, <u>id.</u> § 3E1.1(a).  The government's able brief refutes each of these claims in detail.

The sentence is <u>vacated</u> and the matter <u>remanded</u> to the district court for resentencing in accordance with this opinion.

<u>It is so ordered</u>.