———————————

## DISSENT

———————————

MERRITT, Circuit Judge, dissenting.  I agree that the defendant can enter into a plea agreement that waives further statutory and constitutional procedures.  I agree that he did so in this case.  But the district judge's decision to re-sentence the defendant following his violation of the sentencing agreement should be affirmed.

By holding that the district court did not have jurisdiction to re-sentence Ross following his breach of the original sentencing agreement, the majority opinion tends to deter players in the criminal process from entering into a sentencing agreement because the district court now lacks the teeth to enforce the original contract.  As a result of this ruling, if a defendant waives his right to future litigation in exchange for a lighter sentence, but then brings a new action anyway (thereby forcing the government to respond and depriving it of the benefit of its bargain), the district court cannot penalize the defendant by re-sentencing him using the sentence that would have applied in the absence of any agreement.  Consequently, prosecutors will be less likely to allow defendants to enter into these agreements because they know the contract cannot be enforced should the defendant choose to breach it.  In addition, the district court will be unable to simply refuse to hear the defendant's new claim because there is always the possible that the claimed *Brady* violation or new evidence will prove meritorious.

These agreements greatly benefit all three "players" in the criminal justice system. Defendants receive shorter sentences, prosecutors reduce their caseload, and courts  are freed from some of the many frivolous criminal appeals with which we now deal.  Our court's opinion deters all three participants from using this valuable tool.

Accordingly, I respectfully dissent.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2001 FED App. 0089P (6th Cir.)
File Name:  01a0089p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

  *v.*                                              No. 00-3278

DANIEL P. ROSS,
    *Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 96-00065—Donald C. Nugent, District Judge.

Argued:  October 31, 2000

Decided and Filed:  March 29, 2001

Before:  MERRITT and SILER, Circuit Judges; SARGUS,
District Judge.

———————————

## COUNSEL

**ARGUED:**    Kevin  R.  Conners,  VORYS,  SATER, SEYMOUR  &  PEASE,  Columbus,  Ohio,  for  Appellant. Daniel S. Goodman, UNITED STATES DEPARTMENT OF

———————————

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

JUSTICE, APPELLATE SECTION, CRIMINAL DIVISION, Washington, D.C., for Appellee. **ON BRIEF:** Kevin R. Conners, Timothy W. Hoover, VORYS, SATER, SEYMOUR & PEASE, Columbus, Ohio, for Appellant. Daniel S. Goodman, UNITED STATES DEPARTMENT OF JUSTICE, APPELLATE SECTION, CRIMINAL DIVISION, Washington, D.C., Jack Sammon, UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

SARGUS, J., delivered the opinion of the court, in which SILER, J., joined. MERRITT, J. (p. 16), delivered a separate dissenting opinion.

––––––––––––––

**OPINION**

––––––––––––––

SARGUS, District Judge. Daniel P. Ross ("Ross"), appellant herein, was convicted by a jury of the following: making false statements to a federally insured bank, in violation of 18 U.S.C. §1010; making false statements to an agency insured by the Housing and Urban Development Department, in violation of 18 U.S.C. §1014; committing wire fraud, in violation of 18 U.S.C. §1341; making false declarations before a grand jury, in violation of 18 U.S.C. §1523; and obstructing justice, in violation of 18 U.S.C. §1503.

Prior to sentencing, Ross and the Government reached a sentencing agreement in which, *inter alia*, Ross agreed not to appeal or file other post-conviction motions. Ross was thereupon sentenced to a term of confinement of ten months, split between imprisonment and home confinement with electronic monitoring.

More than two years after sentencing, and after completion of the term of imprisonment, Ross filed a motion for a new trial on March 11, 1999. The district court denied the motion on the merits, while also finding that the filing of the motion violated the prior sentencing agreement. The Court thereupon

that is, a resentencing of a defendant beyond those exceptions expressly enacted by Congress.

Based upon the foregoing, the Court concludes that the district court was without jurisdiction to reopen the sentencing agreement and to impose a new sentence upon the appellant. The decision of the trial court to resentence the defendant is therefore **REVERSED**.

The remaining issues raised by the appellant as to whether the district judge imposed a vindictive sentence or whether the defendant had legitimate expectation of finality in his sentence are rendered moot by this Court's determination that the district judge was without jurisdiction to resentence appellant.

**VI.**

Based upon the foregoing, the decision of the district judge is **AFFIRMED** in part and **REVERSED** in part.

the court may modify an imposed sentence of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. . . .

Only two other statutory exceptions modify the general rule expressed in 18 U.S.C. §3582 that a district court may not modify a term of imprisonment once the same has been imposed. Upon the issuance of relief under 28 U.S.C. §2255, a resentencing may occur. Similarly, under 28 U.S.C. §2106, upon remand from a Court of Appeals or the Supreme Court to the district court, a resentencing is authorized by law. Neither of those statutory provisions nor Fed. R. Crim. P. 35 is applicable to this case. No other authority is given to a district court authorizing it to modify a term of imprisonment once such sentence has been imposed.

In *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1028-29 (9th Cir. 1999), the Court rejected a claim that a district court has inherent power to modify a term of imprisonment beyond the authority granted by Rule 35 or 28 U.S.C. §2106 or §2255. The Court held that, in the absence of an express statute or rule to the contrary, a district court is without jurisdiction to reconsider and ultimately reimpose a modified term of imprisonment. *Accord United States v. Zsofka*, No. 97-1240, 1997 WL 440452 (1st Cir. Aug. 5, 1997) (unpublished); *United States v. Blackwell*, 81 F.3d 945 (10th Cir. 1996); *United States v. Crowder*, 947 F.Supp. 1183 (E.D. Tenn. 1996).

The dissent argues that, absent the authority of a district court to resentence, a sentencing agreement is without effect. To the contrary, an agreement which bars appeal, post-sentencing motions, or petitions can be enforced by the outright denial of the relief sought, based upon the terms of the agreement. Consequently, neither party is denied its bargain. More fundamentally, an agreement by the government and the defendant simply cannot operate to permit what 18 U.S.C. §3582(c)(1)(B) expressly prohibits,

resentenced Ross to a period of twenty-one months imprisonment, to be followed by three years of supervised release, with credit for time served. Ross appeals, claiming the district court erred in denying his motion for a new trial, in finding that he breached the sentencing agreement, and in resentencing him to a greater period of incarceration.

## I.

Appellant Ross was formerly employed as a professional accountant and served as County Auditor for Ashtabula County, Ohio from 1975 to 1995. Acting on behalf of one Steve B. Hartman and Hartman Acoustics, Inc., Ross submitted loan application documents to Bank One, seeking a $75,000 loan. Included among the submitted documentation were Hartman's purported tax returns for the years 1989 to 1991, as well as personal financial statements. Ross told a Bank One commercial loan officer that the tax returns had been prepared by an Indiana accountant, when in fact Ross had prepared the tax returns himself. The returns were inaccurate and misrepresented Hartman's true financial status.

Ross also submitted loan application documents on behalf of Hartman Acoustics, Inc. to the Ashtabula County 503 Corporation, a nonprofit entity which lends public money to businesses in an effort to stimulate economic development. Again, the documents submitted by Ross were fraudulently described as having been prepared by another accountant, when in fact Ross prepared the same. Further, the information set forth in the financial documents was inaccurate and misrepresented the company's financial condition by inflating the value of the assets.

Ross also caused fraudulent loan applications to be submitted to the Second National Bank of Warren, Ohio on behalf of the Lake Avenue Dairy Queen. This business was owned by one William Osborn, who also served as Chief Deputy Auditor for Ashtabula County under Ross. Shortly before submitting the loan application, Ross caused the sum of $50,000 to be drawn on the account of Hartman Acoustics,

Inc. and to be deposited in the account of the Lake Avenue Dairy Queen.

After Ross became aware that the FBI was investigating his activities, he induced Osborn, his deputy, to sign a false affidavit which Ross had prepared. In an effort to justify the financial statements previously submitted, Ross prepared an affidavit falsely claiming that Osborn had assisted Ross and Hartman in preparing the tax and financial documents submitted with the loan application made on behalf of Hartman Acoustics, Inc. Ross presented the false affidavit to a federal grand jury on October 30, 1994. Ross further testified before the grand jury that he had spent several days with Hartman and Osborn putting together the business plan for Hartman Acoustics, Inc. In 1994, the grand jury declined to indict Ross and returned a Not True Bill.

Subsequently, Osborn contacted the FBI and stated that the affidavit which he had signed was not true. He admitted to the FBI that he had not assisted Ross or Hartman in preparing the business plan for Hartman Acoustics, Inc. He further stated that he had agreed to sign the affidavit simply because he worked for Ross and considered him to be a friend.

Thereafter, new information was presented to a different grand jury which returned an eight count indictment against Ross. Following a six day jury trial in December 1996, Ross was convicted on all eight counts.

The presentence investigation report recommended that Ross' conviction for obstruction of justice not be grouped for sentencing purposes. This conclusion resulted in two additional offense levels pursuant to U.S.S.G. §3D1.4. The presentence report also recommended that Ross receive a two-level enhancement for use of a special skill, pursuant to U.S.S.G. §3B1.3. Ross filed written objections to the enhancement for use of a special skill and for the separate treatment of the obstruction of justice conviction.

Prior to sentencing, Ross and the Government reached a sentencing agreement. The Government agreed that it would

---

of an acquittal, as required under Fed. R. Crim. P. 33. *See United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir. 1986).

Ross also claims that two new witnesses would destroy the credibility of Osborn's trial testimony that his affidavit supporting Ross' grand jury testimony was false. The district court determined that Ross could have produced the affidavits of these witnesses before trial had he exercised due diligence. In addition, the jury heard Ross testify that Osborn was out to "get" him and knew that Osborn was suing Ross over the Dairy Queen deal. Thus, the district court did not abuse its discretion in finding that this information did not produce the likelihood of an acquittal.

Based upon the foregoing, the Court concludes that the district court did not abuse its discretion in denying the defendant's motion for a new trial.

## V.

Ross next challenges the jurisdiction of the trial court to resentence him on February 22, 2000, following the initial sentencing which occurred on March 11, 1997. Whether the district court had the authority to resentence Ross is a question of law subject to a *de novo* standard of review. *See United States v. Smith*, 73 F.3d 1414, 1417 (6th Cir. 1996).

The district court found that it had jurisdiction to reopen the sentencing in order to enforce the sentencing agreement entered into by the defendant and the government. The district court analogized the circumstances to a breach of contract over which it had authority to remedy the violation of the agreement.

The authority of a district court to resentence a defendant is limited by statute. 18 U.S.C. §3582(c)(1)(B) states:

The court may not modify a term of imprisonment once it has been imposed except that . . .

### IV.

Ross next contends that the district court erred in denying his motion for a new trial pursuant to Fed. R. Crim. P. 33. The decision to grant or deny a motion for a new trial based upon newly discovered evidence is reviewed by this Court for an abuse of discretion. *See United States v. Gaitan-Acevedo*, 148 F.3d 577, 589 (6th Cir. 1998).

The sentencing agreement, however, operates to bar a post conviction claim based on newly discovered evidence. By entering into the agreement, appellant voluntarily relinquished his right to subsequently move for a new trial on this basis.

Moreover, the appellant's basis for the motion included two claims of newly discovered impeachment evidence which is insufficient to warrant a new trial. (J.A. Vol. I, 200-05). Ross claimed that his investigator uncovered new evidence regarding Hartman's prior business dealings which bear substantial similarities to his business conduct with Ross in which Hartman solicited investors in business ventures to produce speakers, embezzled investment funds, failed to produce any product, and ran off with the money. Ross claims this information would have destroyed Hartman's credibility, thus eliminating the only witness that linked Ross to the purposeful use of false information on Hartman's tax returns and loan applications.

The district court held that Ross could have discovered this information before trial had he exercised due diligence, and that Ross' use of a private investigator for discovery supports the district court's holding. In addition, the district court relied on documentary evidence linking Ross to the alleged fraudulent acts and the testimony of several witnesses, including representatives of three financial institutions where Ross filed loan applications. Further, Hartman was vigorously cross-examined regarding possible fraud involving a loan application in Michigan. Even in the absence of the sentencing agreement, the district court did not abuse its discretion in finding that Ross' claim of newly discovered evidence concerning Hartman did not produce the likelihood

not object to the granting of Ross' objections with regard to the grouping of counts and the enhancement for special skills. In exchange, Ross agreed to waive his right to appeal or to file for other post-conviction relief.

At sentencing, the district court engaged in a lengthy colloquy with Ross, explaining the consequences of the proposed sentencing agreement. Thereafter, the district court granted Ross' objection on the separate treatment of Count 8 and the two-level enhancement for use of a special skill. Before making the finding, the court instructed Ross as to the consequences of a waiver of appeal. The court defined the waiver to which Ross agreed in the following manner:

> Now a waiver of an appeal right means as follows: that you hereby waive any right to raise or appeal or file any post conviction writs of habeas corpus concerning any parts pertaining to the prosecution, including all motion defenses, probable cause determinations, and objections to the court's entry of judgment against you, including any error or potential error that may have occurred during the course of the trial.

(J. A. Vol. II, 609).

Had the court adopted the proposed findings in the presentence report, Ross would have faced a total offense level of 16 and a criminal history category of I, yielding a guideline sentencing range of 21 to 27 months of imprisonment. By treating the obstruction of justice count as grouped with the other counts of conviction and by not enhancing Ross' sentence for use of a special skill, the district court caused a four point reduction in the offense level, yielding a guideline sentencing range of 10 to 16 months.

After Ross completed the ten month incarceration imposed by the district judge, he filed a motion for a new trial pursuant to Fed. R. Crim. P. 33. In the motion, Ross argued that he had discovered new evidence which established that the Government had failed to produce exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Further, Ross asserted that newly discovered impeachment evidence concerning Hartman entitled him to a new trial.

The material which Ross presented to the district court involved the payment of $2,000.00 by the FBI for preparation of Hartman's tax returns. The payment was made after the trial and was unknown to Government prosecutors until contacted two years later by counsel for Ross. It is undisputed that the FBI made the payment to an accounting firm that had prepared Hartman's tax returns. An FBI agent had, prior to trial, urged Hartman to complete all tax returns which he was required to file. Because Hartman used an accountant to comply with this request of the FBI, the agency subsequently reimbursed Hartman's accountant.

Ross also claimed that he had discovered two new witnesses who would attack Osborn's credibility with respect to the false affidavit submitted to the grand jury. The witnesses included Judy French, who signed an affidavit indicating that Osborn had approached her to invest in Hartman Acoustics and presented her with a business plan he had prepared. The second witness, Lee Carter, asserted that Osborn was very involved in Hartman Acoustics.

Ross also claimed to have new evidence concerning Hartman. According to Ross, Hartman was involved in an embezzlement scheme in Indianapolis which was investigated by the FBI. Ross asserts that this evidence, showing Hartman in a fraudulent scheme, would have discredited his testimony. Ross contends that the newly discovered evidence rendered him less credible as a witness.

The district court first concluded that Ross had waived his right to seek a new trial. While the sentencing agreement did not expressly waive the right to file a motion for a new trial, the court concluded that the specific language of the agreement made in open court by the defendant encompassed a motion for a new trial. The court also addressed the merits of the issues raised in Ross' motion. The court first found that the payment was not an inducement by the FBI to influence Hartman; rather, the court found that Hartman's

probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id*. at 434. "[S]howing that the prosecution knew of an item of favorable evidence unknown to the defense does not amount to a *Brady* violation, without more." *Id*. at 437. The prosecution "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case. . . . " *Id*. The prosecution also is responsible for gauging "the likely net effect of all such evidence and mak[ing] disclosure when the point of 'reasonable probability' is reached." *Id*.

In this case, Ross claims that the government failed to provide him information regarding its assistance to Hartman in the preparation of his tax returns, together with the government's $2,000 payment for this evidence. In addition, Ross asserts that the government violated *Brady* when it failed to disclose that the FBI was investigating Hartman for an embezzlement scheme in Indianapolis, Indiana, based on a $9,600 check cashed by Hartman. Appellant argues that this information satisfies the *Brady* test since it would have raised doubts about the government's case, particularly Hartman's credibility as the only witness linking Ross to the "false information" in Hartman's financial and loan documents.

The district court held that the government's failure to learn of the $2,000 tax preparation payment and to disclose the same to Ross did not rise to a material level under *Brady*. (J.A. Vol. I, 70). In the district court's view, the payment was not an inducement or consideration made by the FBI to influence Hartman. Rather, Hartman's procrastination in producing the documents resulted in a subpoena to produce the returns, and the payment was made simply to secure documentary evidence. (*Id*. at 71). Indeed, Hartman's reluctance appears logical as the corrected tax information could have proven damaging to his own interests. This Court agrees. Taken as a whole, the district court correctly determined that no *Brady* violation had occurred.

subsequent *Brady* based challenges.[1]  In *Mathew v. Johnson*, 201 F.3d 353, 360-64 (5th Cir. 2000), the Court reviewed the conclusions reached by our sister Courts of Appeals and concluded that most had found a narrowly prescribed right to raise *Brady* issues, while a minority had concluded that a plea of guilty barred review of such claims.  Although the district court found that Ross' *Brady* claims were barred by operation of the sentencing agreement, it nonetheless considered the appellant's claim and found that Ross was not entitled to a new trial.   Because the district court was correct in determining that no *Brady* violation had occurred, this Court need not resolve whether the appellant waived this claim by the operation of the sentencing agreement.

In the absence of a plea or sentencing agreement, this Court reviews the denial of a motion for a new trial based on newly discovered *Brady* evidence for an abuse of discretion.  *United States v. Braggs*, 23 F.3d 1047, 1050 (6th Cir. 1994).  In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the U.S. Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution."   Whether the evidence is exculpatory or impeaching, "favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).   "A 'reasonable

---

[1]In the context of a habeas corpus proceeding, this Court has recognized that a state defendant may raise, after a plea of guilty, a claim that prosecutors withhold exculpatory evidence in violation of *Brady*. *See Campbell v. Marshal*, 769 F.2d 314 (6th Cir. 1985); s*ee also Murr v. Turner*, No. 95-4013, 1996 WL 683500 (6th Cir. Nov. 22, 1996) (unpublished).  *Campbell* sets forth a stringent standard requiring the defendant to show that the evidence withheld "would have been controlling in the decision whether to plead."  *Campbell*, 769 F.2d at 324.

procrastination resulted in a subpoena to produce the tax returns and that the payment was made to secure documentary evidence.

With regard to Ross' claim of newly discovered evidence as to Hartman, the district court found that all of the information could have been discovered before trial through the exercise of due diligence.  The court also noted that Hartman was vigorously cross-examined regarding possible other frauds, which was the essence of the newly discovered information submitted by Ross.

The district court also observed that the jury heard Ross testify that Osborn was out to get him.  The jury also knew that Osborn had sued Ross over a business dispute and that the suit was then pending.  The court again found that the witnesses presented, post trial, could have been discovered by Ross prior to trial through the exercise of due diligence.

In response, the Government filed a motion to reopen the sentencing agreement which the district court granted.  On February 22, 2000, the court resentenced Ross without taking any additional evidence with regard to sentencing issues resolved by the court prior to the first sentencing.  The court thereupon reverted to the original presentence report and found that Count Eight should not be grouped with Counts One through Seven and that Ross should be subject to a two-level enhancement for the use of a special skill in committing the offenses. The district court thereupon imposed a sentence of twenty-one months, with credit given for the ten months previously served.

## II.

Ross first asserts that the district court erred in finding that the filing of a motion for a new trial violated the sentencing agreement.   The parties dispute whether the terms of the sentencing agreement prohibit the filing of a motion for a new trial.  Because the issue raised turns on an interpretation of disputed terms of a sentencing agreement, this Court reviews

the district court's decision for clear error. *See United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000).

Both parties to this appeal have relied on analogies to plea agreements. Plea agreements share some, but by no means all, of the characteristics of the type of sentencing agreement at issue in this case. "There is little developed caselaw specifically relating to sentencing agreements" and their enforcement, so courts turn to caselaw regarding plea agreements for guidance. *United States v. Bradstreet*, 207 F.3d 76, 80 n.2 (1st Cir. 2000); *see also United States v. Robison*, 924 F.2d 612, 613-14 (6th Cir. 1991) (holding that plea agreements are interpreted and enforced pursuant to contract principles). In this case, the sentencing agreement contains a broadly drawn waiver of "any right to raise and or appeal or file any post conviction writs" addressing motion defenses, "objections to the Court's entry of judgment," or "any error or any potential error that may have occurred during the course of the trial." (J.A. Vol. II, 609). As stated in the record by the lower court, this was intended to serve as a waiver "of any right to appeal any aspect of the case whatsoever." (*Id.*)

Ross asserts that the terms of the agreement prohibit the filing of challenges to errors in the case through direct appeal or through petition for writ of habeas corpus, 28 U.S.C. §2255. (Appellant's Reply Brief at 5-13). Thus, according to Ross, he retained the right to file a motion for a new trial because the agreement does not explicitly reference such a filing. (*Id.* at 12).

The government counters that under the plain language of the agreement, Ross knowingly and voluntarily waived his right to object to the court's entry of judgment against him. (Appellee's Final Brief at 35). The terms of the agreement were drawn broadly to encompass all motions, including those requesting a new trial. (*Id.*) In the government's view, by filing the motion, Ross breached his agreement with the government, denying it the benefit of its bargain. (*Id.* at 36-37). Based on the sentencing hearing record, the defendant

stated affirmatively that he understood that he was waiving "any right to appeal any aspect of the case whatsoever." (J.A. Vol. II, 608-10).

In *United States v. Tutt*, No. 97-4297, 1998 WL 670026 at *2 (6th Cir. Sept. 18, 1998) (unpublished), the defendant entered into a plea agreement providing for a waiver of "the right to appeal the sentence in this matter on any ground" unless the sentence exceeded the statutory maximum or constituted an upward departure from the sentencing guidelines. This Court held that, insofar as the defendant had knowingly and voluntarily entered into the waiver agreement and received his benefit, he could not pursue an appeal as the "broad and general waiver leaves no room for any departures except for those noted." *Id.* at *3.

Similarly, this Court concludes that the district court was not clearly erroneous in its interpretation that Ross' waiver of appeal included a motion for a new trial. As the record indicates, Ross knowingly and voluntarily entered into the sentencing agreement and received his benefit. Thus, Defendant Ross' appeal of the district court's denial of his motion for a new trial is not well-taken.

### III.

The appellant next asserts that the district court erred in concluding that the appellant waived the right to assert claims arising under *Brady v. Maryland*, 373 U.S. 83 (1963). This Court reviews *de novo* the question of whether a constitutional right was waived by the appellant. *See Brookhart v. Janis*, 384 U.S. 1, 4 (1966).

This Court has not directly addressed whether a sentencing agreement (or even a plea agreement) which includes a waiver of appeal or post conviction challenges operates to bar