**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Charles Kevin GREEN, Defendant–Appellee.**

No. 97–50594.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 4, 1998.

Decided Aug. 27, 1998.

Edward P. Lazarus, Assistant United States Attorney, Los Angeles, California, for plaintiff-appellant.

Forrest Latiner, Hollywood, California, for defendant-appellee.

Before: FLETCHER, BOOCHEVER, and THOMPSON, Circuit Judges.

PER CURIAM:

Defendant-appellee Charles Green pled guilty to the manufacture and cultivation of 4,315 marijuana plants with intent to distribute, 21 U.S.C. § 841(a)(1). He was sentenced to probation. The government appealed that sentence, and we reversed and remanded for resentencing. *See United States v. Green*, 105 F.3d 1321 (9th Cir.1997). Upon resentencing, Green was sentenced to thirty days in custody, 1500 hours of commu-nity service, and three years of supervised release. The government again appeals the sentence. We have jurisdiction, 18 U.S.C. § 3742(b), and we affirm.

## I.

The United States Forest Service discover-ed a marijuana growing operation in Kratka Ridge in Angeles National Forest in Los Angeles County. A surveillance team ob-served two vehicles near the site. The first was registered to Green's co-defendant, Ter-ry Wolf. The second was registered to Green. On June 26, 1995, Green was observed at the garden. He watered the plants, collected some of the things from a campsite near the garden, and departed. He was stopped by the police soon thereafter.

Wolf was arrested two days later. A search of his home revealed Home Depot receipts which matched some of the garden-ing equipment found at the garden. Addi-tionally, an employee at another hardware store from which some of the equipment came identified a photograph of Wolf. Wolf's daughter was interviewed. She reported that Green had approached her father to ask for Wolf's help in developing the garden and that the two had attempted and failed to start a garden on two occasions before achieving success with the garden at issue in this case. She also reported that Wolf and Green planned to share the profits from the garden in equal shares. Wolf pled guilty one day before Green did.

Green told the Probation Office that he and Wolf had travelled to the garden togeth-er on two occasions and that they had used his truck on at least one of those occasions. He also acknowledged that he had accompa-nied Wolf to Home Depot to buy supplies and that he had taken PVC pipe to the garden on the day of his arrest as a favor to Wolf. He reported that Wolf was not a friend but was known to him through friends. He also indicated that he and Wolf had no formal agreement regarding profit-sharing but that he expected to receive either 50% of the product or the profits.

Green pled guilty and entered into a plea agreement with the government. The statu-

tory minimum sentence for violation of 21 U.S.C. § 841(b)(1)(A) is ten years. However, the government agreed that Green was eligible for the "safety valve," United States Sentencing Guidelines (U.S.S.G.) § 5C1.2, and an adjustment for acceptance of responsibility. The adjusted offense level was 23, and given that Green had no criminal history points, the sentencing range was 46 to 57 months. The district court departed downward fifteen points, sentencing Green to five years probation, on the basis that Green's criminal behavior was aberrant. As part of his probation, Green was to serve 30 days in a jail-type facility on consecutive week-ends, perform 3,000 hours of community service, and report to the court every 120 days.

We held that the district court erred in failing to give the government notice that it would depart downward at sentencing. *See Green,* 105 F.3d at 1322. We also held that as a matter of law, it was impermissible to grant probation to a defendant who had violated 21 U.S.C. § 841(a)(1). While application of the safety valve could enable the court to sentence a defendant to less than the statutory minimum, it could not enable the court to impose only probation. *Id.* at 1323–24.

This appeal concerns what happened at resentencing. There, the district court imposed a 30 day sentence in custody (for which Green was given credit for time served), three years of supervised release, and 1500 hours of community service.[1] The court held that Green had had a minimal role in the offense, an adjustment which decreased Green's offense level by four points. It also stated that a downward departure was warranted because of California's "view" of marijuana and defendant's post-sentencing rehabilitation.

## II.

■ We review a district court's departure decision for an abuse of discretion. *See United States v. Sablan,* 114 F.3d 913, 916 (9th Cir.1997) (en banc) (citing *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 2047–48, 135 L.Ed.2d 392 (1996)). In doing so, we give "substantial deference" to the district court's decision to depart "for it embodies the traditional exercise of discretion by a sentencing court." *Koon,* 116 S.Ct. at 2045. Whether a factor is a permissible ground for departure is a question of law, but "[l]ittle turns on whether ... we label review of this particular question abuse of discretion or *de novo,* for an abuse of discretion standard does not mean a mistake of law is beyond appellate correction." *Id.* at 2047.

■ The district court's factual findings are reviewed for clear error, *United States v. Thompson,* 80 F.3d 368, 370 (9th Cir.1996), including whether a defendant's role in a criminal activity was minimal or minor, *United States v. Pinkney,* 15 F.3d 825, 827 (9th Cir.1994).

## III.

The district court identified three factors that played a role in its sentencing decision: Green's minimal participation in the marijuana growing enterprise; Green's post-sentencing conduct; and California's view of marijuana. We consider each in turn.

### A. Adjustment for Minimal Participation in Offense

■ The sentencing guidelines provide for a four level downward adjustment in a defendant's offense level "if the defendant was a minimal participant" in the criminal activity. U.S.S.G. § 3B1.2(a) (1995).[2] Uncontested evidence linking Green to the garden was his presence there on one confirmed occasion when he watered the plants. The fact that he gathered belongings from the campsite indicates that he was there on at least one other occasion. Indeed, he admitted that he had been to the garden on two prior occasions. He also stated that he was there on the day of his arrest as a favor to Wolf. By contrast, Wolf was the person identified by the hardware store employee as the person who, usually alone, frequented the store for supplies. There is no indication that he recognized a photograph of Green. Further, a

---

1. Green had already served 1300 hours of his community service by the time he was resentenced.

2. The November 1, 1995 edition of the Guidelines was used to sentence Green.

search of Wolf's home revealed receipts from Home Depot that matched the equipment at the site. There is no indication that any evidence was seized from Green's home. Wolf's vehicle was identified as one that was seen near the garden with some frequency over the past year. Green's truck was not similarly identified. Green's statements, that he watered the plants to assist Wolf and that he had been to the garden only a few times in the past, coupled with the lack of physical evidence linking him to the garden, support the court's finding that his role was minimal as compared to Wolf's role.

The government's evidence suggesting that Green's role was as significant as Wolf's came from Wolf's daughter. The district court reasonably could have discounted her statements because of the obvious interest she may have had in placing blame on Green rather than her father. However, the government also offered the declaration of Agent Rita Wears, a Forest Service agent who interviewed Green regarding his eligibility for the safety valve. She stated that Green acknowledged that he had made two previous attempts to maintain a marijuana garden with Wolf and that the two contributed roughly equally to the physical labor, although Wolf was present at the garden more often than he was. These statements in part corroborate Wolf's daughter's statements. However, Green argued to the district court that Agent Wear's statements were inaccurate and that a typed government report of one of the two days of the interview indicates that Green stated that Wolf performed 95% of the work involved in this particular garden. Green contends that the two shared the labor regarding an earlier garden which yielded a minimal amount of marijuana for personal use. Finally, Green's statement that he expected to share equally in the profits also supports the government's contentions that his role was not minimal. He admitted that there was no formal arrangement, however, and the court may have believed that Green's statement reflected his

hopes for compensation rather than the reality of the situation.

In summary, there is some evidence to support both Green's and the government's position regarding Green's role. Although the issue is a close one we do not believe that the court clearly erred in concluding that Green's role was minimal. The uncontested physical and surveillance evidence supports such a conclusion. As to Agent Wear's declaration, the district court may have believed that Green's challenge to her statements was sufficient to cast doubt on the import of her declaration, at least to the extent that it would work neither in favor nor against Green. Although Green's own statement about the compensation he hoped to receive is troubling, it is not enough, in itself, for us to conclude that the district court clearly erred, particularly since Green admitted that there was no formal agreement to share the profits of the enterprise.

### B. Departure for Post–Sentencing Conduct

#### 1.

The government asserts that this issue is controlled by *United States v. Gomez–Padilla*, 972 F.2d 284 (9th Cir.1992). Gomez originally was sentenced to 136 months imprisonment for possession of marijuana with intent to distribute. We remanded for resentencing because the district court improperly had relied on inaccurate information that Gomez had received $3000 for his role in the criminal enterprise. At resentencing, Gomez asked the district court to consider his exemplary behavior in prison during the two years between his original sentencing and resentencing as a ground for departure. When the district court refused to do so, he appealed. We held that a district court may not consider post-sentencing conduct at resentencing, concluding that "in light of Rule 35[3] and the limited nature of the remand, [the district court] had no discretion to reduce Gomez's sentence due to his exemplary prison conduct." *Id.* at 286; *see also United States v. Klump*, 57 F.3d 801, 803 (9th Cir.

---

**3.** "The court shall correct a sentence that is determined on appeal under 18 U.S.C. 3742 to have been imposed in violation of law ...

    (1) for imposition of a sentence in accord with the findings of the court of appeals; or

(2) for further sentencing proceedings if, after such proceedings, the court determines that the original sentence was incorrect."

Fed.R.Crim.P. 35(a).

1995) (stating in dicta that "resentencing on remand is de novo but the court may not consider post-sentencing conduct or conduct beyond the scope of a limited remand").

*Gomez–Padilla* is inapplicable to the instant case. Here, the district court was to sentence Green *ab initio*. In *Gomez–Padilla*, the district court was to consider a single issue upon resentencing and thus was precluded from considering other sentencing issues. More importantly, however, we agree with Green that *Gomez–Padilla* is no longer controlling authority in light of *Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). In *Koon*, the Court specifically stated that a district court cannot be precluded categorically from considering any factor at sentencing so long as that factor is not one of the "forbidden" factors outlined in the guidelines.[4] *Id.* at 2044–45.

Three circuit courts, post-*Koon*, have looked at the question of whether post-sentencing conduct, specifically rehabilitation, may be considered as a basis for departure upon resentencing. *See United States v. Rhodes*, 145 F.3d 1375 (D.C.Cir.1998); *United States v. Core*, 125 F.3d 74, 77 (2d Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 735, 139 L.Ed.2d 672 (1998); *United States v. Sally*, 116 F.3d 76, 80 (1997). All held that it was a proper basis for departure. We join our sister circuits.

The Second Circuit determined that there was no difference between post-offense rehabilitation and post-sentencing rehabilitation. *Core*, 125 F.3d at 77. Since the Second Circuit already had determined that post-offense rehabilitation may be a proper basis

for departure, it followed that post-sentence rehabilitation may likewise be a proper basis. The court noted that at resentencing, the sentencing court was required to assess the defendant "as he stood before the court at that time." *Id.* Thus, the court found that it was appropriate for the sentencing court to consider, in its discretion, whether the defendant's post-sentencing rehabilitation merited a downward departure. The Third Circuit's reasoning was similar. *See Sally*, 116 F.3d at 80 (holding that, "we find no reason to distinguish between post-offense and post-conviction rehabilitation efforts").

The D.C. Circuit held that post-sentencing rehabilitation was a proper basis for departure because it was not specifically forbidden by the Sentencing Guidelines. *See Rhodes*, 145 F.3d at 1379. The court rejected an argument raised by the government in the instant case—that defendants who are granted departures based on post-sentencing behavior receive unfair treatment because they are "lucky enough" to be resentenced. *Id.* at 1381. The court noted that defendants who are resentenced are resentenced because they received illegal sentences, not because of some random or fortuitous event. *Id.*

■ We conclude, consistent with the three other circuits to analyze this issue, that post-sentencing rehabilitative efforts may be a basis for a downward departure. Several circuits have already determined that post-offense rehabilitation may be a basis for departure.[5] Like the Second Circuit, we cannot ascertain any meaningful distinction between post-offense and post-sentencing rehabilitation.[6] Nor is there support in

---

4. These factors include race, gender, national origin, creed, religion, socio-economic status, lack of guidance as a youth, drug or alcohol dependence, and economic hardship. *Id.* at 2044.

5. *See, e.g., United States v. Brock*, 108 F.3d 31, 35 (4th Cir.1997) ("The Sentencing Commission has not expressly forbidden consideration of post-offense rehabilitation efforts; thus, they potentially may serve as a basis for departure."); *Sally*, 116 F.3d at 80 (3d Cir.1997) (same).

6. The government suggests that permitting Green to benefit from the fact that he is being resentenced by allowing the court to take into consideration his post-sentencing conduct provides a

"windfall." As we noted, the D.C. Circuit has rejected this precise argument. *See Rhodes*, 145 F.3d at 1381. We also note that in *United States v. Jones*, 114 F.3d 896 (9th Cir.1997), we permitted the *government* to benefit by the circumstances that developed between defendant's original sentencing and his resentencing. Jones was originally ordered to pay a $1000 fine. Upon resentencing, the court held that it was proper for the district court to consider the fact that Jones' debts had decreased since the day he was originally sentenced (he paid-off more of his mortgage). *Jones*, 114 F.3d at 897; *see also Klump*, 57 F.3d at 802–03 (allowing court to consider a state law sentence that had been imposed in the interval between defendant's original sentence and resentencing, resulting in a higher sentence for the defendant).

the Guidelines for the proposition that a court is forbidden from looking at a defendant's rehabilitative efforts upon resentencing. Given the intervening Supreme Court decision in *Koon*, the categorical rule set forth in *Gomez–Padilla* is no longer appropriate.

### 2.

■ Having concluded that we may not categorically forbid the district court from departing downward based on Green's post-sentencing rehabilitation efforts, the question remains whether Green's efforts take this case "out of the heartland" of the guidelines. The district court did not abuse its discretion in so finding in the instant case.

The documents available to both parties and the court at the time of resentencing, and Green's statement to the court at resentencing, provide considerable detail regarding Green's post-sentencing rehabilitation. The group with which Green has been volunteering, Rancho San Antonio, forwarded a glowing letter regarding Green's work. This letter suggests that Green's work in assisting needy and deprived youths has been exemplary, and that he has gone "above and beyond" in making himself "available for daily tutoring, weekend special events, out therapy program, and was instrumental in starting Saturday computer training programs." Green submitted a summary of his experiences and made a statement to the court at sentencing that likewise reflected his devotion to his community service and the benefits he has reaped.

There is no case law suggesting what a defendant must do to demonstrate the level of rehabilitation that takes his case out of the heartland of the Guidelines. The Second Circuit suggests that "a highly successful rehabilitation is not taken into consideration appropriately ('in kind and degree')" by the Sentencing Guidelines. *Core*, 125 F.3d 74. Likewise, the D.C. Circuit suggests that post-sentencing rehabilitation may be the basis for a departure only if it is present to "an exceptional degree." *Rhodes*, 145 F.3d at 1383. The district court is in a unique posi-

tion and has "an institutional advantage over appellate courts in making these sorts of determinations." *Koon*, 116 S.Ct. at 2047. That is particularly so in this case where Green had regular contact with the court over the several years it has taken this case to wend its way through the appeals process. We find no abuse of discretion in the district court's determination in the instant case that Green's rehabilitation was "highly successful" in kind and degree or "exceptional."

The government insists that Green merely followed the requirements of his probation. While true, not everyone who follows the terms of his or her probation achieves rehabilitation, let alone extraordinary rehabilitation. While Green was required to do community service, there was no requirement that he actively engage himself in that experience, learn from that experience, achieve the results he has at Rancho San Antonio, or go "above and beyond" in his work there.

### C. Departure for California's View of Marijuana

■ We agree with the government that the district court should not have departed, in part, on the basis of California's view of marijuana. Although it is clear after *Koon* that courts may not categorically be restricted from departing on any ground other than those explicitly forbidden in the guidelines, to depart on this basis in this case would be inappropriate.

■ As the government points out, California has not legalized the actions of Green—the cultivation of marijuana with the intent to sell. In any event, a state's definition of a crime is not controlling in the context of the sentencing guidelines. *See Taylor v. United States*, 495 U.S. 575, 590–91, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). Further, there is nothing unusual about the circumstances of the marijuana growing in this case. There is no argument, for example, that Green was growing the marijuana for medicinal purposes.

"Windfall" is not an accurate characterization. As the D.C. Circuit Court pointed out, defendants who are resentenced are not resentenced pursuant to some fortuitous event; they are resen-

tenced because their original sentences were illegal. Looking to intervening events at the time of resentencing is appropriate.

The fact that the district court relied on an impermissible factor—California's view of marijuana—in its departure decision, however, does not automatically require reversal. We will reverse only if we determine that the sentence imposed would have been different but for the district court's error. *See Williams v. United States,* 503 U.S. 193, 202–03, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992); *see also United States v. Alba,* 933 F.2d 1117, 1123 (2d Cir. 1991) (when faced with both appropriate and inappropriate grounds for downward departure, appellate court should decide on a case-by-case basis whether remand for resentencing is required). In this case, it seems clear that the district court would have reached the same sentence even if it had not taken into account California's view of marijuana. The district court did not state how many levels it was departing to take into account California's view of marijuana. It is quite clear, however, that given Green's rehabilitative efforts, the district court was motivated primarily by the level of success achieved by Green in helping young people through their problems and the dedication he brought to those efforts. California's view of marijuana was not the focus of the district court's departure decision. The record suggests that the district court's reference to it was more of an offhand, stray remark than an intended sentencing consideration. We do not believe that the district court's level of departure would have been different had it not taken into account California's view of marijuana.

### D. Extent of Departure

Finally, the government asserts that the court abused its discretion in departing downward to the extent that it did. *See* 18 U.S.C. § 3742(f)(2)(B) (holding that the appellate court may reverse a sentence that is too low). The government suggests that the district court departed to the extent that it did only because it preferred a different sentence than is authorized by the guidelines. *See* U.S.S.G. § 5K2.0, commentary. We disagree.

The district court based its decision to depart, and to depart eleven levels, on its determination that Green had worked exceptionally hard, and that Green, and perhaps society, would benefit most from Green's continued work at Rancho San Antonio and his continued rehabilitation. Given the district court's unique position to observe Green over time, we do not find this explanation unreasonable although a fuller articulation of the reasons for departure is always helpful. The district court does not need to analogize to comparable Guideline provisions to explain the extent of its departure so long as its explanation justifying departure and the extent of departure is reasonable. *See Sablan,* 114 F.3d at 919 (upholding a sixteen level upward departure). "[W]here, as here, a district court sets out findings justifying the magnitude of its decision to depart and the extent of departure from the Guidelines, and that explanation cannot be said to be unreasonable, the sentence imposed must be affirmed." *Id.*

### IV.

For the reasons stated above, we AFFIRM.