UNITED STATES of America,
Plaintiff–Appellee,

v.

Kevin Jerron COOK, Defendant–
Appellant.

No. 02–5512.

United States Court of Appeals,
Sixth Circuit.

Feb. 24, 2004.

William Cohen, Asst. U.S. Attorney, U.S. Attorney's Office, Nashville, TN, for Plaintiff–Appellee.

Robert A. Ratliff, Roberts, Shields & Green, Mobile, AL, for Defendant–Appellant.

BEFORE: NORRIS, GILMAN, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.

The defendant, Kevin Cook, pled guilty to conspiring to distribute cocaine and marijuana. Cook objected to a two-level increase in his offense level for possessing a dangerous weapon in connection with his drug crimes pursuant to § 2D1.1(b)(1) of the Sentencing Guidelines. The district court held that § 2D1.1(b)(1) applied, and Cook appeals that decision. Because the district court's finding that Cook possessed a pair of pistols in connection with his offenses was not clearly erroneous, we affirm the judgment of the district court.

## STATEMENT OF FACTS

On October 24, 2000, law enforcement agents executed a search warrant at Cook's residence, following an investigation of a drug trafficking ring between Laredo, Texas, and Nashville, Tennessee. During the search, the agents discovered a pair of firearms in the bedroom–specifically, a .22 caliber Glock semi-automatic handgun near the headboard of the bed and a SIG SP 2340 semiautomatic handgun in a chest drawer. Both of the firearms were loaded. The agents also found "a user amount of marijuana" and $93 in cash

on top of the television in the bedroom, as well as $2,811 in cash in a gym bag in the living room.

On November 16, 2000, a grand jury sitting in the Middle District of Tennessee returned an indictment naming, among others, Cook. On February 22, 2001, the grand jury returned a superseding indictment charging Cook with conspiring to distribute over five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1) & 846, and seeking forfeiture of the cash seized at Cook's residence. On June 20, 2001, a grand jury sitting in the Southern District of Texas returned an indictment charging Cook, among others, with conspiring to distribute over 1000 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) & 846. The Texas case against Cook was later transferred to the Middle District of Tennessee. On September 14, 2001, pursuant to a plea agreement, Cook pled guilty to the charges in the Tennessee and Texas indictments.

At sentencing, the district court, over Cook's objection, applied a two-level enhancement for possession of a dangerous weapon pursuant to § 2D1.1(b)(1) of the Sentencing Guidelines. The district court held that a presumption that Cook possessed the weapons in connection with his drug offenses arose when Cook conceded that he possessed the weapons, and that Cook had not adduced sufficient evidence to overcome the presumption. The court sentenced Cook to a term of 121 months imprisonment for each offense, with the sentences to run concurrently. Cook timely appealed his sentence.

### ANALYSIS

The Government contends that Cook's challenge to the application of the § 2D1.1 enhancement is not properly before the court because Cook in his plea agreement waived any right to appeal his sentence.

Cook argues that he is not bound by the waiver because the Government was allegedly in material breach of the plea agreement. We need not resolve the waiver issue because. in any event, the district court did not clearly err in applying the enhancement.

A district court's finding that a defendant possessed a firearm during a drug crime is a factual finding subject to review for clear error. *United States v. Darwich,* 337 F.3d 645, 664 (6th Cir.2003). A district court makes a clearly erroneous finding of fact "when, although there may be some evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation omitted).

Section 2D1.1(b)(1) of the Sentencing Guidelines provides for a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed" in connection with a drug offense. U.S.S.G. § 2D1.1(b)(1) (2002). This enhancement "reflects the increased danger of violence when drug traffickers possess weapons." *Id.* cmt. n. 1.

Enhancement analysis under § 2D1.1(b)(1) has two parts. *United States v. Solorio,* 337 F.3d 580, 599 (6th Cir.2003). First, the Government bears the burden of showing by a preponderance of the evidence that the defendant actually or constructively possessed the weapon. *Darwich,* 337 F.3d at 665; *Solorio,* 337 F.3d at 599. "Constructive possession of an item is the ownership, or dominion or control over the item itself, or dominion over the premises where the item is located." *Darwich,* 337 F.3d at 665 (internal quotation omitted). Second, once the Government meets its burden of showing that the defendant possessed a weapon, a presumption arises that the weapon was connected to the offense. *Id.* The burden

then shifts to the defendant to demonstrate that "it was clearly improbable that the weapon was connected with the crime." *Id.* (internal quotation omitted).

Several factors are relevant to the determination of whether a weapon was connected to the offense, although none is completely controlling: (1) the type of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds, or paraphernalia; (5) the defendant's evidence concerning the use of the weapon; and (6) whether the defendant was actually engaged in drug trafficking, rather than mere manufacturing or possession. *United States v. Moses,* 289 F.3d 847, 850 (6th Cir.2002); *United States v. Edmonds,* 9 Fed.Appx. 330, 331 (6th Cir.2001).

The district court held that, because Cook conceded that he owned or possessed the weapons during the period in which he was engaged in drug-trafficking activity, the presumption arose that the weapons were possessed in connection with the offense. The court further held that Cook had not shown that it was "clearly improbable" that the weapons were not connected with the offense. The court noted that Cook did not have any job other than drug trafficking and that a gym bag containing a large amount of cash was found in the apartment with the weapons.

On appeal, Cook concedes that he "possessed" the pistols, and instead concentrates on the second part of the enhancement analysis, arguing that it was clearly improbable that the guns were connected to his drug offenses. He notes that only a small amount of "personal use" marijuana was found with the guns, that agent Kennedy conceded on cross-examination that

no witness specifically mentioned that Cook carried a weapon when he dealt drugs, and that there was no showing that drug-trafficking activity occurred at his residence.

The district court did not clearly err in finding that Cook possessed the weapons in connection with his drug crimes. Cook does not dispute that he "possessed" the pistols found at his residence, and a number of factors support the conclusion it was not clearly improbable that the pistols were connected to Cook's drug-trafficking activities.[1] Cook has not offered an innocent explanation, such as hunting, sport shooting, or collecting, for possessing these weapons. *Compare United States v. Zimmer,* 14 F.3d 286, 291 (6th Cir.1994) (defendant testified that he used rifles to hunt deer). The pistols were loaded and easily accessible when they were found. *Cf. United States v. Calhoun,* 49 F.3d 231, 237 (6th Cir.1995) (noting that shotgun under defendant's bed was "easily accessible and was kept loaded"). They were located in the vicinity of a gym bag containing nearly $3,000 in cash. *Cf. Solorio,* 337 F.3d at 599 (noting that guns were found in a pair of boots on a top of a bag full of objects related to drug trafficking, including a money counter, drug ledgers, paper money wrappers, and rubber bands); *United States v. Sparks,* No. 98–3519, 1999 WL 430449, at *1 (6th Cir. June 17, 1999) (noting that gun was found in bedroom dresser with $30,000 in admitted drug proceeds). Cook was engaged in actual drug trafficking, rather than merely manufacturing or possessing drugs. In short, we cannot say that the district court clearly erred in determining that it was not "clearly improbable" that the pistols were

---

1. At the plea hearing, Cook admitted to numerous specific instances of drug trafficking, including receiving, and further distributing, 10 kilograms of cocaine, and purchasing 100 pounds of marijuana on two separate occasions.

 

connected to Cook's offenses.[2]

Finally, Cook argues that the Government's introduction of information obtained from Cook's proffer (which, according to the Government, supported the application of the § 2D1.1(b)(1) enhancement) at the sentencing hearing constituted prosecutorial misconduct because it violated the plea agreement, and that his trial counsel's failure to object to the introduction of this information amounted to ineffective assistance of counsel. It appears that Cook is simply dressing his challenge to the § 2D1.1(b)(1) enhancement in the guise of "prosecutorial misconduct" and "ineffective assistance" in an effort to circumvent the appeal waiver in his plea agreement, which contains exceptions for prosecutorial misconduct and ineffective assistance of counsel claims. However, to the extent that these claims are independent from his challenge to the enhancement, they are without merit. Cook makes no effort to explain how the Government's introduction of proffer material, apparently in good faith, after a warning to the court and defense counsel that the Government was going to introduce this material, and without relevant objection by defense counsel, qualifies as prosecutorial misconduct. Similarly, Cook ignores the familiar rule that, "[g]enerally, this court will not review an ineffective assistance of counsel claim raised for the first time on direct appeal because the record has not been sufficiently developed for assessing the merits of the allegation." *United States v. Allison*, 59 F.3d 43, 47 (6th Cir.1995) (internal quotation omitted). Also, the district court did not rely on the information from Cook's proffer in applying the § 2D1.1(b)(1) enhancement, so any error concerning the introduction of the information was harmless.

### CONCLUSION

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**

---

**2.** Cook also urges the court to adopt the position set forth in Justice Thomas' concurring opinion in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and hold that the conduct supporting the enhancement should have been charged in the indictment and proven beyond a reasonable doubt. However, Cook did not raise this issue below, and the district court did not commit plain error by applying the existing law.