NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0211n.06

Nos. 08-5521, 08-5522

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Feb 23, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff - Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF KENTUCKY |
| | ) | |
| TERRY BRANHAM and KATHY | ) | |
| BRANHAM, | ) | |
| | ) | O P I N I O N |
| Defendants - Appellants. | ) | |
| _____ | ) | |

Before: BOGGS and McKEAGUE, Circuit Judges, and GOLDSMITH, District Judge.[*]

MARK A. GOLDSMITH, District Judge. Appellants Terry and Kathy Branham were convicted by a jury of various drug-related crimes stemming from their involvement in a cocaine distribution conspiracy.[1] At Terry's sentencing, the district court, over defense objections: (i) applied a two-level enhancement for possession of a dangerous weapon; (ii) applied a two-level enhancement for being a manager or supervisor in the conspiracy; (iii) withheld a two-level reduction for acceptance of responsibility; and (iv) withheld a two-level "safety-valve" reduction. At Kathy's sentencing, the district court, over defense objections: (i) applied a two-level enhancement for possession of a dangerous weapon; (ii) applied a two-level enhancement for

_____

[*] The Honorable Mark A. Goldsmith, United States District Judge for the Eastern District of Michigan, sitting by designation.

[1] Since Terry and Kathy Branham share the same last name, they are referred to individually by their first names and collectively as "Appellants."

1

obstruction of justice; and (iii) withheld a four-level reduction for being a minimal participant. On appeal, Appellants challenge these aspects of their sentences. In addition, Kathy challenges her conviction on the ground that the district court failed to sever her trial or, alternatively, that the district court failed to instruct the jury not to consider evidence relating to her co-defendants in determining her guilt.

For the reasons that follow, we affirm Terry's sentence and Kathy's conviction, but vacate Kathy's sentence and remand for resentencing.

## I. FACTUAL BACKGROUND

Appellants Terry and Kathy Branham, husband and wife, and several others, were found guilty by a jury on various drug charges, including conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(2) and 846, distribution of cocaine and aiding and abetting its distribution in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, and aiding and abetting the use of a communication facility (telephone) to facilitate the distribution of cocaine in violation of 21 U.S.C. § 843(b) and 18 U.S.C. § 2. In addition, the jury found certain property belonging to Appellants forfeitable to the United States as derived from, or used to facilitate, their illegal drug activity.

The pertinent facts leading up to the convictions are uncontroverted. The general conspiracy operated as follows. Terry Branham, working together with his father and co-defendant, Roy Branham, received their cocaine supply from co-defendants Darrell Triplett and Pamela Justice. Roy and Terry Branham, with the help of Kathy Branham, then re-distributed the cocaine to co-defendants Mica Patrick and Johnny Michael Castle for their own personal use and/or trafficking

2

activities.[2] Additional defendants were named in the indictment, but they are not relevant for present purposes.

In 2005 and 2006, the Federal Bureau of Investigation and Kentucky State Police monitored numerous cocaine transactions during which Terry sold cocaine to a confidential informant. Kathy accompanied her husband during one particular transaction occurring on July 21, 2006. On that date, Kathy was present when Terry sold cocaine. After receiving cash from the confidential informant, Terry handed it to his wife and instructed her to count it, which she did.

A few days later, on July 24, 2006, while on his way to sell cocaine to Mica Patrick, Terry called Kathy from the road and instructed her to monitor police activity in the area by listening to a police scanner that the two kept in their home. Earlier on the same day, Kathy spoke to Patrick via telephone about the transaction.

There was no evidence presented at trial that Appellants sold or stored drugs at their house. Rather, the drug transactions occurred mostly in store or restaurant parking lots. In addition, the Government did not present evidence that Appellants brought firearms with them to these locations.

On December 13, 2006, the police executed a search warrant at Appellants' residence. The police did not find drugs or drug paraphernalia in the house, but they did find, among other things: (i) $7,500 in cash located in the closet of the spare bedroom; (ii) $384 in cash located in a purse; (iii) a loaded Ruger .22 target pistol in the nightstand drawer next to Appellants' shared bed; (iv) a loaded Taurus revolver in the same nightstand drawer; (v) an unloaded Smith and Wesson revolver in the same nightstand drawer; (vi) an unloaded Highpoint rifle in a closet; (vii) an unloaded New Haven

---

[2] Triplett, Justice, Patrick, and Castle all pled guilty to various charges stemming from their roles in the conspiracy.

12-gauge shotgun in the closet; (viii) a certificate of deposit from Community Bank in the amount of $5,129.59; and (ix) evidence of a savings account from Family Bank containing $11,001.04. The jury found all of these items forfeitable to the United States as directly or indirectly derived from illegal drug sales except items (ii) and (ix). With regard to item (ix), Kathy testified during the forfeiture phase of the trial that the money in her savings account at Family Bank ($11,001.04) was earned legitimately through her past work in the hotel business. Notably, she did not testify one way or another regarding the source of the remaining items.

Appellants were tried together, along with co-defendants Roy Branham and Tina Mills. Prior to the trial, Tina Mills moved – without success – for a separate trial based on her unique circumstances as a defendant in this matter who was not alleged by the Government to have directly participated in the conspiracy as a buyer or seller of drugs. Neither Terry nor Kathy joined the motion, nor did they independently move for separate trials.

During the trial, Terry did not dispute the fact that he sold cocaine. Rather, he disputed his role in the broader conspiracy, and likewise disputed the allegation that he used a "communication facility" to facilitate his crimes. The jury ultimately found Terry guilty of conspiracy to distribute cocaine, and numerous counts of aiding and abetting the distribution of cocaine and aiding and abetting the use of a communication facility (telephone) to facilitate the distribution of cocaine. The jury found Kathy guilty of conspiracy to distribute cocaine, one count of aiding and abetting the distribution of cocaine, and one count of aiding and abetting the use of a communication facility (telephone) to facilitate the distribution of cocaine.

Terry and Kathy were sentenced to terms of imprisonment of 151 months and 87 months, respectively. Both sentences fall within their respective advisory Guideline ranges of 121-151

months and 78-97 months.

## II. ANALYSIS

Appellants argue that their sentences should be vacated, and that re-sentencing is required, because the district court improperly calculated their respective Guideline ranges, resulting in the imposition of procedurally unreasonable sentences. *See Gall v. United States*, 552 U.S. 38, 51 (2007) (sentence is procedurally unreasonable if the district court improperly calculated the Guidelines range); *United States v. Damra*, 621 F.3d 474, 508 (6th Cir. 2010) (remand for re-sentencing required if district court miscalculates the applicable Guidelines range). Specifically, Terry contends that the district court erred in computing his total offense level by: (i) applying a two-level enhancement for possession of a dangerous weapon pursuant to U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2D1.1(b)(1) (2007); (ii) applying a two-level enhancement for being a manager or supervisor in the conspiracy pursuant to U.S.S.G. § 3B1.1(c); (iii) withholding a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a); and (iv) withholding a two-level "safety-valve" reduction pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a).

Additionally, Kathy argues that district court miscalculated her total offense level by: (i) applying a two-level enhancement for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1); (ii) applying a two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1; and (iii) withholding a four-level reduction for being a "minimal participant" pursuant to U.S.S.G. § 3B1.2(b).

Kathy also attacks her conviction, arguing that the district court erred in refusing to sever her trial from that of her co-defendants or, alternatively, instruct the jury not to consider evidence

5

presented against her co-defendants in determining her guilt. Kathy contends that she is entitled to a new trial.

## A. Sentencing Challenges

### 1. Dangerous Weapon Enhancement
### (Terry and Kathy Branham)

Terry and Kathy Branham both received two-level enhancements pursuant to U.S.S.G. § 2D1.1(b)(1) for possessing a dangerous weapon in connection with the commission of their drug crimes. The two-level dangerous weapon enhancement is applied "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). The commentary to § 2D1.1(b)(1) provides that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1, cmt. n.3. Under this framework, the Government bears the initial burden of establishing, by a preponderance of the evidence, that (1) the defendant actually or constructively possessed the weapon, and (2) the weapon was possessed during the commission of the offense. *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007). If the Governments meets its burden, the burden then shifts to the defendant to show that it was "clearly improbable" that the weapon was connected to the offense. *Id*. at 606-07. The enhancement should be applied if the defendant cannot meet his or her burden. *Id*. at 607.

Appellants do not dispute the district court's factual finding that loaded and unloaded firearms were found in their shared residence. Thus, they do not dispute the first element of the Government's initial burden. Rather, they argue that there is no evidence that the weapons were connected to their crimes – and thus, the burden should have never shifted – in light of the fact that (i) no drugs were found in the residence where the guns were kept, (ii) no drug transactions took

6

place on those premises, and (iii) there is no evidence that the guns were carried off the premises on which they were kept. In other words, Appellants argue that, although they possessed firearms, they were not possessed in connection with their crimes because no actions were taken in furtherance of their crimes at the location where the guns were kept. Alternatively, Appellants argue – based on the same three facts listed above – that they have adequately established that it was "clearly improbable" that the weapons were connected to the offense. According to Terry, the guns were possessed for general "home protection" unrelated to his drug dealing activity; according to Kathy, one of the weapons found in the house was too big for a woman of her stature to operate. In support of her argument that the enhancement was improperly applied, Kathy relies mainly on the Eleventh Circuit's decision in *United States v. Stallings*, 463 F.3d 1218 (11th Cir. 2006), discussed below.

The district court concluded that the enhancement was appropriate for both Terry and Kathy because the evidence reflected that (i) they possessed firearms during the time period charged in the indictment, (ii) one of the firearms was a type typically used by individuals engaged in illegal drug activities, (iii) additional firearms were located in the same house as thousands of dollars in cash that the jury found represented drug proceeds, and (iv) some of the guns were loaded and accessible to Appellants at night.

The district court's finding that a defendant possessed a firearm during a drug crime is a factual finding that we review for "clear error." *United States v. Benson*, 591 F.3d 491, 504 (6th Cir. 2010).[3] However, if the application of those facts to the Guidelines is challenged, then the court's

---

[3] The "clearly erroneous" standard governs many of the issues raised in this appeal. As the Seventh Circuit has aptly noted, and this court has acknowledged in *United States v. Perry*, 908 F.2d 56, 58 (6th Cir. 1990), "[t]o be clearly erroneous, . . . the . . . decision must be dead wrong," "strik[ing] us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988).

review is *de novo*. *Id*. Because Appellants do not challenge the district court's factual findings, but rather only its legal conclusion that the guns were tied to their crimes, review is *de novo*. *Id*.

This court considers several factors in reviewing the question of whether a firearm was related to a particular drug offense, none of which is alone controlling:

> (1) the type of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds, or paraphernalia; (5) the defendant's evidence concerning the use of the weapon; and (6) whether the defendant was actually engaged in drug trafficking, rather than mere manufacturing or possession.

*United States v. Cook*, 89 F. App'x 998, 1000 (6th Cir. 2004).

These factors, on the whole, strongly militate in favor of applying the enhancement in the present case. Notably, the district court concluded – and Appellants do not dispute – that loaded handguns were found in Appellants' nightstand drawer, within the same house as thousands of dollars in cash determined by the jury to be drug proceeds. In addition, Appellants kept in their house a shotgun with a pistol grip.[4] Based on these facts – namely, the loaded handguns located bedside for easy access at night, and possession of a pistol-grip shotgun, which is a style of gun commonly used by drug dealers – the district court properly concluded that the weapons were used in connection with the drug crimes of which Appellants were convicted. This is true despite the fact that Appellants did not store drugs, or conduct actual drug transactions, at the house in which the firearms were found, *see United States v. Wheaton*, 517 F.3d 350, 368 (6th Cir. 2008) (reiterating that the guns and drugs do not have to be in the same location for the firearms enhancement to

---

[4] Special Agent Kidd testified at Terry's sentencing hearing that he would "almost flat out guarantee . . . that not many members of the NRA would have a weapon like that in their house," as that type of weapon is "meant for concealment" and not typically used by "law-abiding citizens trying to protect their 40 acres." T. Branham Sentencing Tr. at 39-40 (R. 721).

8

apply); *United States v. Howard*, 36 F. App'x 758, 761-62 (6th Cir. 2002) ("[e]vidence that the firearm was used or carried during the drug sale is unnecessary"), and despite the fact that the firearms and the drug proceeds were kept in separate rooms within the house. *See United States v. Bartholomew*, 310 F.3d 912, 924 (6th Cir. 2002) (dangerous weapon enhancement properly applied where drugs were sold in basement and gun was kept upstairs); *United States v. Chalkias*, 971 F.2d 1206, 1216-17 n.13 (6th Cir. 1992) (dangerous weapon enhancement properly applied where the gun and drugs were found on separate floors within the house).

Moreover, the district court did not err in concluding that Appellants failed to adequately show that it was "clearly improbable" that the firearms were connected to their crimes. Terry's conclusory statement that the weapons were used for general protection purposes unrelated to his drug activity is insufficient to counter the weight of the undisputed evidence on which the district court relied in applying the enhancement to Appellants' respective sentences, as is Kathy's unsupported assertion that the pistol-grip shotgun is "neither reasonable nor appropriate for a woman of [her] diminutive stature to operate." That the shotgun was not custom-fitted for Kathy's use does not mean she was physically incapable of operating it, if she felt inclined to do so, and, in any case, it does not detract from the significance of the numerous smaller, more manageable guns kept in the house.

Finally, Kathy's reliance on the Eleventh Circuit's decision in *Stallings* is misplaced. In that case, the appellate court reversed the district court's decision to apply the firearms enhancement because – although guns were found in the defendant's house – the defendant shared the house with at least three other adults, no drugs or drug proceeds were kept in the house with the guns, no drug activity occurred in the house, and there was no suggestion that the defendant carried a gun off the

9

premises to where the charged drug activity occurred. 463 F.3d at 1220-21. On those facts, the court found no nexus between the firearms and the crime. *Id*. at 1221. The present case is clearly distinguishable in light of the extensive evidence offered by the Government, discussed above, connecting the guns possessed by Appellants to their crimes.

## 2. Leadership Enhancement
### (Terry Branham)

Terry received a two-level enhancement for being a manager or supervisor in the conspiracy pursuant to U.S.S.G. § 3B1.1(c). This enhancement is applied if the defendant was "an organizer, leader, manager, or supervisor in any criminal activity of one or more other participants." U.S.S.G. § 3B1.1(c), cmt. n.2. A defendant qualifies for a leadership enhancement if the district court concludes that he or she exercised decisionmaking authority, recruited accomplices, received a larger share of the profits, was instrumental in the planning phase of the criminal venture, or exercised control or authority over at least one accomplice. *United States v. Lalonde*, 509 F.3d 750, 765-766 (6th Cir. 2007). The Government bears the burden of proving that the enhancement applies by a preponderance of the evidence. *United States v. Vandeberg*, 201 F.3d 805, 811 (6th Cir. 2000).

The district court determined that Terry exercised supervisory authority over his wife by instructing her to (i) count drug proceeds, (ii) intercept police radio traffic in the area, and (iii) relay telephone messages pertaining to drug activity.[5] A district court's decision concerning an enhancement for defendant's role in an offense is reviewed for clear error. *United States v. Ward*,

---

[5] The district court stated at sentencing that it believed that a four-level enhancement was justified under U.S.S.G. § 3B1.1(a) for being an "organizer or leader of . . . criminal activity that involved five or more participants." However, the court did not apply the four-level enhancement, and instead applied only a two-level enhancement pursuant to § 3B1.1(c), because the court did not give Terry notice that it was contemplating an enhancement based on the number of people involved in the conspiracy.

506 F.3d 468, 476 (6th Cir. 2007).

Terry does not specifically challenge any of the district court's factual findings pertaining to his supervisory role in the conspiracy. Rather, he states – without explanation and without citation to record evidence – that he did not recruit his wife to participate in criminal activity, that he did not supervise or share proceeds with his wife, and that the evidence suggests nothing more than "jointly undertaken activity between husband and wife." The evidence, however, does not support Terry's argument. For the most part, the record supports the district court's factual conclusions concerning Terry's supervisory role over his wife. During the trial, law enforcement officers testified that Terry instructed his wife to monitor the police scanner and count drug proceeds during a particular transaction. The record also reflects that Kathy took a phone message to her husband concerning a drug order, but the trial transcript does not reflect that Terry actually directed his wife to do so. In any event, the enhancement is appropriate based on Terry having directed his wife to count drug proceeds and monitor police radio traffic.[6]

### 3. Reduction for Acceptance of Responsibility
### (Terry Branham)

The district court denied Terry a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), which permits a two-level reduction when the defendant "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). In withholding the reduction, the district court noted that, although Terry admitted guilt at trial as to the individual drug charges contained in the indictment, he contested the conspiracy charge – the more serious charge in this case

---

[6] During sentencing, the Government argued that the enhancement was appropriate based on the fact that Terry received a larger share of the profits than did others in the conspiracy and coached others on how to be a better drug dealer. The district court, however, did not rely on this evidence in applying the enhancement.

11

– forcing the Government to present its proofs at trial.

Because the district court "is in a unique position to evaluate a defendant's acceptance of responsibility," its determination "is entitled to great deference on review." U.S.S.G. § 3E1.1(a), cmt. n.5. *See also United States v. Paulette*, 457 F.3d 601, 608 (6th Cir. 2006) (determination of whether a defendant has accepted responsibility is reviewed for clear error). A defendant wishing to receive a reduction for acceptance of responsibility must prove facts entitling him or her to such a reduction by a preponderance of the evidence. *United States v. Bacon*, 617 F.3d 452, 458 (6th Cir. 2010).

Terry has not satisfied his burden. While "conviction by trial . . . does not automatically preclude a defendant from consideration," a defendant who is tried and convicted is entitled to credit for acceptance of responsibility only in "rare situations," such as "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct)." U.S.S.G. § 3E1.1(a), cmt. n.2. Here, Terry contested the essential factual elements pertaining to the conspiracy charge until the very end, arguing during his closing statement that the Government failed to prove "this great conspiracy." Because Terry forced the Government to prove his guilt on the conspiracy charge, and other charges, as well, the district court properly denied him a reduction for acceptance of responsibility. That Terry admitted guilt on some of the charges is not controlling. *See Paulette*, 457 F.3d at 608 (affirming denial of reduction for acceptance of responsibility where the defendant pled guilty to two of five counts but left the Government to its proofs on the remaining three counts).

### 4. Safety-Valve Provision
### (Terry Branham)

The district court denied Terry a reduction under the safety-valve provision of 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a), which permits the court to "impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence." To qualify for the safety-valve reduction, the defendant must satisfy each of the following five requirements:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f). On appeal, Terry argues, as he did before the district court, that he satisfies all five § 3553(f) requirements and, therefore, is entitled to safety-valve relief. A defendant bears the burden of proving by a preponderance of the evidence that he or she is eligible for safety-valve consideration, and a district court's refusal to grant safety-valve relief is a factual finding that is reviewed for clear error. *United States v. Haynes*, 468 F.3d 422, 426-427 (6th Cir. 2006).

The district court correctly found Terry ineligible for relief under the safety-valve provision due to his possession of a firearm in connection with the conspiracy and his failure to be completely

13

forthright with the Government regarding his role, and the role of his wife, in the conspiracy.  In addition, although not noted by the district court, Terry's leadership role precluded safety-valve relief, as well.  *See* 18 U.S.C. § 3553(f)(4) and U.S.S.G. § 5C1.2(a)(4).  Because Terry has not satisfied his burden on three of the five requirements for safety-valve relief, the district court properly determined that he is ineligible for a reduction under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a).

### 5.  Obstruction of Justice Enhancement
### (Kathy Branham)

Kathy received an enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1, which mandates a two-level increase to a defendant's offense level when he or she "willfully obstruct[s] or impede[s] . . . the administration of justice with respect to the investigation, prosecution, or sentencing of the . . . offense of conviction."  U.S.S.G. § 3C1.1.  Application Note 4 lists examples of covered conduct, one of which is "committing . . . perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction."  U.S.S.G. § 3C1.1 cmt. n.4(b).  In this Circuit,

> [f]or a district court to enhance a defendant's sentence under § 3C1.1, the court must: 1) identify those particular portions of defendant's testimony that it considers to be perjurious; and 2) either make a specific finding for each element of perjury or, at least, make a finding that encompasses all of the factual predicates for a finding of perjury.

*United States v. Lawrence*, 308 F.3d 623, 632 (6th Cir. 2002) (relying on *United States v. Dunnigan*, 507 U.S. 87, 95 (1993) ("[I]f a defendant objects to a sentence enhancement resulting from her trial testimony, a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice . . . under the perjury definition . . . set out"

14

in the federal perjury statute, 18 U.S.C. § 1621.)). In reviewing a district court's application of the obstruction of justice enhancement pursuant to § 3C1.1, this court employs a three-step review process:

> First, this Court applies a clearly erroneous standard to the district court's findings of fact with respect to the enhancement. Second, a district court's determination of whether facts constitute obstruction of justice is a mixed question of law and fact that requires *de novo* review. Third, once there has been a finding that the defendant obstructed justice, application of the enhancement is mandatory, so review of the enhancement at that point is *de novo*.

*United States v. Roberts*, 243 F.3d 235, 237 (6th Cir. 2001) (citations omitted).

The district court determined that Kathy provided materially false testimony during the forfeiture portion of the trial and, on that basis, imposed a two-level increase in her offense level for obstruction of justice pursuant to § 3C1.1. As noted above, the jury found some assets belonging to Appellants to be forfeitable as drug proceeds, while finding that certain other assets were not forfeitable. Specifically, the jury found $7,500 in United States currency to be derived from illegal drug transactions and thus forfeitable, along with a certificate of deposit in the amount of $5,129.59 from Community Trust Bank. However, the jury did not find to be forfeitable $384 in United States currency and $11,001.04 held in the Branham's savings account at Family Bank.

The district court determined that Kathy falsely testified during trial that two assets determined by the jury to be forfeitable – namely, $7,500 in cash and the certificate of deposit – were derived from lawful employment. However, a review of the pertinent portion of the trial transcript reveals that Kathy simply did not testify one way or other regarding the source of those two assets. The only testimony given by Kathy relating to the source of any asset concerned the money contained in her savings account at Family Bank, $11,001.04, which Kathy testified was lawfully obtained

15

through legitimate employment.[7] The jury found her testimony credible inasmuch as it found that particular asset not forfeitable. Because Kathy's testimony in no way conflicts with the jury's findings, the district court clearly erred by increasing her offense level for obstruction on that basis.

### 6. Mitigating-Role Reduction
### (Kathy Branham)

The Guidelines authorize a four-level reduction in offense level for defendants who are deemed "minimal" participants in criminal activity, a two-level reduction for "minor" participants, and a three-level reduction for those defendants falling somewhere in between. U.S.S.G. § 3B1.2. Kathy requested a four-level reduction for being a minimal participant, but received at sentencing only a two-level reduction based on the district court's finding that she was a minor participant and not a minimal participant in the conspiracy.

The defendant bears the burden of proving a mitigating role in the offense by a preponderance of the evidence, *United States v. Salgado*, 250 F.3d 438, 458 (6th Cir. 2001), and this court reviews the district court's role determination for clear error. *United States v. Groenendal*, 557 F.3d 419, 423 (6th Cir. 2009). *See also* U.S.S.G. § 3B1.2, cmt. n.3(C) ("The determination whether to apply [a role reduction] involves a determination that is heavily dependent upon the facts of the particular case.").

The Application Notes to § 3B1.2 instruct that the "minimal participant" reduction is intended to be used "infrequently," and applies only to defendants who are "plainly among the least culpable of those involved in the conduct of a group." *Id*. at cmt. n.4. "[T]he defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others

---

[7] The remainder of Kathy's testimony mostly concerned her employment and earnings history.

16

is indicative of a role as minimal participant." *Id*. The "minor participant" reduction, on the other hand, covers defendants "who [are] less culpable than most other participants, but whose role could not be described as minimal." *Id*. at cmt. n.5.

At her sentencing hearing, Kathy argued – as she does on appeal – that she was a minimal participant in the conspiracy, and thus entitled to a four-level reduction, because she played only a "negligible," "sporadic," and "passive" role in the conspiracy compared to the respective roles of her co-conspirators, as illustrated by the fact that her name "came up very, very rarely" throughout the lengthy trial. According to Kathy, she was not aware of the true scope and intricate details of the conspiracy, and her role was limited to (i) relaying a drug-related phone message to her husband, (ii) accompanying her husband during a drug transaction, and (iii) one instance of counting drug money at her husband's direction. Kathy emphasizes that, unlike her co-conspirators who organized and participated in drug deals, she never, on her own initiative, took proactive steps in furtherance of the conspiracy and, instead, merely did what she was asked to do by her husband, which was not much in the grand scheme of the operation. She contends that her case is analogous to *United States v. Green*, 152 F.3d 1202 (9th Cir. 1998), a case, discussed in more detail below, in which the appellate court affirmed the district court's determination that the defendant was a minimal participant.

The district court did not clearly err in categorizing Kathy as a minor – and not a minimal – participant in the conspiracy. At sentencing, the district court evaluated Kathy's role in the conspiracy and, although finding her to be a "lesser player than her husband," noted that she "clearly knew what was going on" when she "assist[ed] her husband in his drug trafficking activities" by (i) "receiv[ing] a number of phone calls for him and relay[ing] those phone calls to him with respect to persons . . . interested in purchasing drugs that were using code language in the conversations";

17

(ii) "receiv[ing] calls from [him] and follow[ing] his instructions in terms of warning him about police activity in the area"; and (iii) accompanying him on drug deals and "receiving [and counting] cash [for him]." Based on these activities, the district court found that Kathy did not lack knowledge or understanding of the scope and structure of the conspiracy and, therefore, denied minimal-participant categorization. Because the district court's decision rests on a plausible interpretation of the record and individualized findings pertaining to Kathy's participation, the decision is not to be disturbed on review.

Notably, Kathy does not dispute the three facts on which the district court and jury relied in finding that she assisted her husband in carrying out the conspiratorial objective; rather, she argues that her role as a passive assistant and non-leader/organizer who merely did what she was told entitles to her to minimal participant classification. However, this court has held that members of criminal enterprises are not minimal participants "simply because others planned a scheme and made all the arrangements for its accomplishment." *United States v. Vicari*, 228 F. App'x 593, 597 (6th Cir. 2007). Here, although Kathy did not give orders or serve in a managerial capacity, she aided those who did by helping her husband evade police detection and smoothly carry out his illegal drug activity. This court has affirmed the denial of minimal participant status on facts roughly analogous to the ones presented here. *See id.* at 594, 597 (minimal-participant status properly denied where the defendant – one of 20 involved in a decade-long drug conspiracy – sporadically (*i.e.*, a few times over the course of a decade) played the assisting role of money courier and driver).

In support of her argument that she should have been classified as a minimal participant, Kathy relies on the Ninth Circuit's decision in *Green*. In that case, the defendant and his partner in crime cultivated a garden containing marijuana plants. 152 F.3d at 1204. The defendant was

18

observed on one occasion watering the plants; in addition, he admitted that he had: (i) travelled to the garden with his partner on two other occasions, at least one time in the defendant's truck, (ii) accompanied his partner to the hardware store to buy cultivation supplies for the garden, and (iii) delivered those supplies to the garden. *Id*. The district court had before it varying accounts regarding the defendant's comparative role in the crime, ranging from a 50% role to a mere 5% role, although the defendant himself admitted that he expected to share equally in the profits of the operation. *Id*. at 1204, 1206. The district court labeled the defendant a minimal participant in the offense and decreased his offense level by four points, stating that a downward departure was warranted in light of California's "view" on marijuana and the defendant's rehabilitation progress. *Id*. at 1205. The Ninth Circuit, with trepidation, affirmed:

> [T]here is some evidence to support both [the defendant's] and the government's position regarding [the defendant's] role. Although the issue is a close one we do not believe that the court clearly erred in concluding that [the defendant's] role was minimal . . . . Although [the defendant's] own statement about the compensation he hoped to receive is troubling, it is not enough, in itself, for us to conclude that the district court clearly erred, particularly since [the defendant] admitted that there was no formal agreement to share the profits of the enterprise.

*Id*. at 1206.

Kathy's reliance on *Green* is reasonable, as the defendant in that case was granted minimal-participant status on undisputed facts that reflect a far greater role in the marijuana-growing enterprise than Kathy's role in the present cocaine conspiracy. Indeed, the defendant in *Green* was apparently one of only two individuals controlling and/or cultivating the garden, and he admitted that he participated in activities (watering the plants and buying cultivation tools) that were crucial to the viability of the operation. He further admitted that he expected to reap 50% of the profits from the operation. With all due respect, the district judge's minimal participant determination in *Green*

19

simply cannot be squared with the legal guidelines, discussed above, by which this court is bound; rather, the result in *Green* seems to develop more from that particular court's policy on certain drug crimes – a policy not shared by Congress – than from a straightforward application of prevailing legal principles. And the appellate court – confined in its analysis by the extremely deferential standard of review governing the district judge's ruling – could not conclude that the district judge's determination was clearly erroneous. Thus, although *Green* supports Kathy's position on role reduction, her argument is ultimately unpersuasive because it overlooks the standard of review governing such determinations. Just as the Ninth Circuit affirmed based on clear error review, we also affirm denial of minimal participant status to Kathy as not clearly erroneous.

## B. Challenge to Conviction
### (Kathy Branham)

Kathy contends that the jury must have been confused – convicting her on the basis of "spillover" evidence relating to her co-defendants – because, according to her, the evidence against her was insufficient as a matter of law to support a conviction. Kathy attributes the supposed juror confusion to two purported errors committed by the district court: its failure to afford Kathy a separate trial, and its failure to instruct the jury not to consider evidence related to her co-defendants in determining her guilt.

Kathy's argument is unpersuasive for three reasons. First, the evidence presented at trial was sufficient to support Kathy's conviction. In reviewing the sufficiency of the evidence, the relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). A defendant

challenging the sufficiency of the evidence bears the "very heavy burden" of showing that "the judgment is not supported by substantial and competent evidence upon the record as a whole." *United States v. Khalil*, 279 F.3d 358, 368 (6th Cir. 2002).

To establish a drug conspiracy, one of the crimes of which Kathy was convicted, the Government must prove the following three elements beyond a reasonable doubt: (1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy. *United States v. Allen*, 619 F.3d 518, 523 (6th Cir. 2010). The evidence presented against Kathy at trial was sufficient to support her conspiracy conviction. As noted above, Kathy assisted her husband in accomplishing the conspiratorial objective by counting drug money, monitoring police-radio traffic, and speaking with a cocaine buyer. Viewing the trial testimony in the light most favorable to the Government, and cognizant of the fact that the "[t]he government need not show that a defendant participated in all aspects of the conspiracy," *United States v. Avery*, 128 F.3d 966, 970-971 (6th Cir. 1997), the jury reasonably found Kathy guilty of conspiracy. Because the record contains ample evidence supporting her conviction, Kathy's argument that the jury was confused and must have convicted her based on spillover evidence is unpersuasive.

Kathy's argument is also unpersuasive because the district court did not err when it failed to sever Kathy's trial. In fact, Kathy never even asked the district court to sever her trial.[8] Regardless,

---

[8] Kathy states in her brief on appeal that she joined the severance motion of one of her co-defendants, Tina Mills. However, as the Government correctly points out, Kathy simply did not join that motion, nor does the docket reflect that she separately requested severance. Mills moved for a separate trial via motion filed before the district court on July 16, 2007. In that motion, Mills advanced two main arguments in support of her request for a separate trial. Both arguments were premised specifically on Mills's unique circumstances, circumstances that were not shared by Kathy or any of the other defendants. Specifically, Mills's request for severance was based on the fact that she was the subject of only one count within the numerous-count indictment, and was the only defendant not alleged to have been directly involved in drug

21

this court has held that severance arguments may be raised for the first time on appeal, even if no such relief was sought before the district court; the district court's failure to order severance *sua sponte* is reviewed for clear abuse of discretion. *See United States v. Critton*, 43 F.3d 1089, 1098 (6th Cir. 1995).

The district court did not abuse its discretion in declining *sua sponte* to provide Kathy a separate trial. The pertinent rule is Federal Rule of Criminal Procedure 14(a), which permits separate trials "[i]f . . . consolidation for trial appears to prejudice a defendant or the government." We have held that there is a "strong policy presumption . . . in favor of joint trials when charges will be proved by the same evidence and result from the same acts," and that "[t]he mere fact that co-defendants will present antagonistic defenses does not mandate severance," unless the presentation of antagonistic defenses in the same trial will "mislead or confuse the jury." *Critton*, 43 F.3d at 1098. As discussed above, there is nothing to support Kathy's theory that she was convicted based on insufficient evidence, nor is there anything suggesting that Kathy was prejudiced by the joint trial.

Finally, contrary to Kathy's assertion otherwise, the district court *did* instruct the jury that it was to consider and render verdicts on each defendant individually.[9] In any event, we have held

---

trafficking activity. Kathy is not mentioned in the motion or in the magistrate judge's opinion denying the motion, and she points to absolutely nothing supporting her statement that she requested a separate trial in the proceedings below.

[9] The district court instructed the jury as follows:

[I]n our system of justice, guilt or innocence is personal and individual. It is your duty to separately consider the evidence against each Defendant on each charge, and to return a separate verdict for each one of them. For each one, you must decide whether the government has presented proof beyond a reasonable doubt that a particular Defendant is guilty of a particular charge.

that "[t]he jury must be presumed capable of sorting out the evidence and considering the case of each defendant separately." *United States v. Frazier*, 584 F.2d 790, 795 (6th Cir. 1978). Kathy is not entitled to a new trial.

### III. CONCLUSION

For the reasons stated above, we affirm Terry's sentence and Kathy's conviction, but vacate Kathy's sentence and remand for resentencing.

---

* * * *

> Your decision on any one defendant or one charge, whether it is guilty or not guilty, should not influence your decision on any of the other Defendants or charges.

Jury Instructions, No. 11 (R. 459).

23